**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SHANDONG SHINHO FOOD
INDUSTRIES CO., LTD.,

                    Plaintiff,

        v.                                              Civil Action No: 19-cv-01621-MKB-RER

MAY FLOWER INTERNATIONAL, INC.,
GB GREEN GASTRONOME, LLC; and
XIAOBO YAO,

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF THE CASE ................................................................................... 2

ARGUMENT ............................................................................................................. 3

   I.    Motion to Dismiss Standard ................................................................. 3

   II.   Plaintiff Lacks Standing For Count I, Count II, Count V And Count VIII ........... 3

       A.   *The Nunc Pro Tunc* Assignment After The Filing Of The Complaint Did not Confer Standing Retroactively ................................. 5

       B.   Shinho Lacked The Standing To Sue As An Exclusive Licensee ................................................................................... 5

           1.   Shinho is not a "Legal Representative" of Sun for purposes of the Lanham Act ......................................... 7

           2.   Shinho is not an "Assign" or its Equivalent under the Lanham Act ...................................................... 7

   III.   Count I For Trademark Counterfeit Should Be Dismissed ................................. 9

       A.   Shinho Lacks Standing To Bring The Trademark Counterfeit Claim ............................................................... 9

       B.   Even Without The Issue Of Standing, Shinho's Pleading On Trademark Counterfeit Is Still Insufficient ................................... 9

   IV.   Count II Federal Infringement Claim Should Be Dismissed For Lack Of Standing ....................................................................... 12

   V.   Count III Trade Dress Claim Should Be Dismissed ........................................... 12

       A.   Character and Scope of Claimed Cong Ban Lv Trade Dress ................... 13

       B.   Functionality ............................................................................... 13

       C.   Secondary Meaning ..................................................................... 15

i

D.    Likelihood of Confusion ............................................................................. 17

VI.    Count IV and VII Fail to State a Cause of Action for Unfair Competition .......... 17

A.    The Unfair Competition Claim Under The Lanham Act Fails Because There Is No Valid Trademark Entitled To Protection ....................................................................................... 17

B.    The Unfair Competition Claim Under Common Law Also Fails Because The Allegation Of "Bad Faith" Is Not Sufficient ......................................................................................... 19

VII.    Plaintiff's Dilution and Injury to Business Reputation Claim (Count V) Should be Dismissed .......................................................................... 20

A.    Shinho Lacks Standing To Bring This Cause Of Action .......................... 20

B.    Shinho Has Not Sufficiently Alleged Either Dilution By Blurring Or Dilution By Tarnishment ...................................................... 21

VIII.    Plaintiff's Deceptive Trade Practices Claim (Count VI) Should Be Dismissed .................................................................................................... 21

**CONCLUSION** ........................................................................................................ **22**

ii

## **TABLE OF AUTHORITIES**

### Cases

*Alps S. LLC v. Ohio Willow Wood Co.*,
    787 F.3d 1379 (Fed. Cir. 2015)..............................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................3

*Blumenthal Distrib., Inc. v. Exec. Chair, Inc.*,
    2010 WL 5980151 (E.D.N.Y. Nov. 9, 2010)............................................................15

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
    973 F.2d 1033 (2d Cir. 1992)...................................................................................16

*Brockmeyer v. Hearst Corp.*,
    248 F. Supp. 2d 281 (S.D.N.Y. 2003)...............................................................20, 21

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) .....................................................................17

*CA, Inc. v. Simple.com, Inc.*,
    621 F.Supp.2d 45 (E.D.N.Y. 2009) .........................................................................19

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F.Supp.3d 317 (E.D.N.Y. 2014) ...........................................12, 13, 14, 15, 19

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*,
    531 F.2d 11 (2d Cir. 1975).......................................................................................18

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
    2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) ...........................................................5

*Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*,
    486 F. Supp. 2d 286 (S.D.N.Y. 2007)......................................................................11

*Estate of Ellington ex rel. Ellington v. Harbrew Imports, Ltd.*,
    812 F.Supp.2d 186 (E.D.N.Y. 2011) .......................................................................17

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*,
    2015 WL 4468083 (S.D.N.Y. July 8, 2015) ............................................................10

*Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*,
    784 F. Supp. 2d 441 (S.D.N.Y. 2011).......................................................................16

*Fed. Treasury Enterp. Sojuzplodoimport v. SPI Spirits Ltd.*,
    726 F.3d 62 (2d Cir. 2013).....................................................................4, 6, 7, 8, 9, 12

*Fenstermaker v. Obama*,
354 F. App'x 452 (2d Cir.2009) ............................................................... 4, 5

*FragranceNet.com, Inc. v. Les Parfums, Inc.*,
672 F. Supp. 2d 328 (E.D.N.Y. 2009) ......................................................... 18

*Gaia Techs. v. Reconversion Techs.*,
93 F.3d 774 (Fed. Cir. 1996)..................................................................... 4, 5

*Gavish v. Revlon, Inc.*,
2004 WL 22101269 (S.D.N.Y. Sept. 30, 2004)............................................. 3

*GMA Accessories, Inc. v. BOP, LLC*,
765 F. Supp. 2d 457 (S.D.N.Y. 2011)......................................................... 10

*Gucci Am., Inc. v. Guess?, Inc.*,
868 F.Supp.2d 207 (S.D.N.Y.2012)............................................................ 20

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)......................................................................... 3

*Hirsch v. Qingdao Orien Commercial Equip. Co.*,
2015 WL 1014352 (E.D.N.Y. Mar. 6, 2015) ................................................ 5

*ID7D Co. v. Sears Holding Corp.*,
2012 WL 1247329 (D.Conn. Apr. 13, 2012) ............................................... 14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
58 F.3d 27 (2d Cir. 1995)......................................................................... 19

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
478 F.Supp.2d 340 (E.D.N.Y. 2007) .......................................................... 18

*Landscape Forms*,
113 F.3d at 380 (2d Cir. 1997)............................................................ 12, 14

*Le Sportsac, Inc. v. K Mart Co.*,
754 F.2d 71 (2d Cir.1985)......................................................................... 15

*L'Oreal USA, Inc. v. Trend Beauty Corp.*,
2013 WL 4400532 (S.D.N.Y. Aug. 15, 2013) ........................................... 5, 6

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
97 F. Supp. 3d 485 (S.D.N.Y. 2015).......................................................... 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).................................................................................. 4

*Merck Eprova AG v. BrookStone Pharms., LLC*,
    920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013)........................................................................... 21

*Montres Rolex*,
    718 F.2d at 532 (2d Cir. 1983)............................................................................................. 11

*Nat'l Lighting Co. v. Bridge Metal Indus., LLC*,
    601 F. Supp. 2d 556 (S.D.N.Y. 2009)................................................................................... 13

*Prince of Peace Enters. v. Top Quality Food Mkt., LLC*,
    760 F.Supp.2d 384 (S.D.N.Y.2011)...................................................................................... 20

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
    894 F. Supp. 2d 288 (S.D.N.Y. 2012)................................................................................... 19

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
    234 F. Supp. 3d 548 (S.D.N.Y. 2017)................................................................................... 21

*Sherwood 48 Assocs. v. Sony Corp. of Am.*,
    76 F.Appx. 389 (2d Cir. 2003).............................................................................................. 12

*Sly Magazine, L.L.C. v. Weider Pubis. L.L.C.*,
    529 F. Supp. 2d 425 (S.D.N.Y. 2007)................................................................................... 21

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001).......................................................................................................... 13, 14

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
    2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012)......................................................................... 16

*Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
    2013 WL 866867 (S.D.N.Y. Mar. 8, 2013) ........................................................................... 16

*Wal-Mart Stores v. Samara Bros.*,
    529 U.S. 205 (2000).............................................................................................................. 12

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)........................................................................................ 12, 13, 14

*Zdenek Marek v. Old Navy (Apparel) Inc.*,
    348 F. Supp. 2d 275 (S.D.N.Y. 2004)..................................................................................... 3

## Statutes

15 U.S. Code § 1125 (c).................................................................................................................. 20

15 U.S.C. § 1114.................................................................................................. 2, 3, 4, 5, 6, 9, 11

15 U.S.C. § 1125(a) ................................................................................................................. 2, 12

15 U.S.C. § 1127 ................................................................................................................. 6, 10

Fed. R. Civ. P. 12(b)(2) ........................................................................................................... 1

N.Y. General Business Law §349 .................................................................................. 1, 2, 21

N.Y. General Business Law §360-l ....................................................................... 1, 2, 4, 19, 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 3

Defendants May Flower International, Inc. ("May Flower"), GB Green Gastronome, LLC ("GB Green"); and Xiaobo Yao ("Yao") (collectively referred to as "Defendants") respectfully submit this memorandum of law in support of its motion to dismiss plaintiff Shandong Shinho Food Industries Co., Ltd. ("Shinho" or "Plaintiff")'s Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

In its Second Amended Complaint, plaintiff Shinho alleged eight claims against Defendants: federal trademark counterfeiting (Count I), federal trademark infringement (Count II), trade dress infringement (Count III), federal unfair competition (Count IV), dilution and injury to business reputation under NYGBL §360-l (Count V), deceptive trade practices under NYGBL §349 (Count VI), common law unfair competition (Count VII) and common law trademark infringement (Count VIII). Shinho's claims are based on a design mark with Chinese characters transliterate to "Cong Ban Lv" with a U.S. Trademark Registration No. 4,098,259 (the "Cong Ban Lv Mark") and an unregistered trade dress (the "Cong Ban Lv Trade Dress").

Shinho's Second Amended Complaint should be dismissed in its entirety.

**First**, Plaintiff lacks standing to bring the following claims: federal trademark counterfeiting (Count I), federal trademark infringement (Count II), dilution and injury to business reputation under NYGBL §360-l (Count V) and common law trademark infringement (Count VIII), because Plaintiff was not the registrant of the Cong Ban Lv Mark at the commencement of this lawsuit and Plaintiff did not qualify as an assignee or legal representative of the registrant Mr. Sun. And the mid-litigation *nunc pro tunc* assignment did not confer standing retroactively.

**Next**, the trade dress infringement (Count III) claim fails because Plaintiff's pleading on the trade dress claim lacks the requisite specificity and its pleading did not overcome the

1

presumption of functionality and the pleading is not sufficient to demonstrate that the claimed trade dress has secondary meaning.

**Further**, federal unfair competition (Count IV) and common law unfair competition (Count VII) claims fail because there is no valid trademark or trade dress entitled to protection and Plaintiff failed to properly allege bad faith for the common law unfair competition.

**Last**, Plaintiff's New York state claims—dilution and injury to business reputation under NYGBL §360-l (Count V), deceptive trade practices under NYGBL §349 (Count VI)—also fail because Shinho has not sufficiently alleged either dilution by blurring or dilution by tarnishment for the dilution claim and Plaintiff alleges no facts in support of any harm to the public as a result of the purported deceptive practices of Defendants.

## STATEMENT OF THE CASE

On July 18, 2018, Shinho filed the two-count original complaint ("OC") in the Southern District of Texas, Houston Division, against defendant May Flower for federal trademark infringement (15 U.S.C. § 1114) and federal unfair competition (15 U.S.C. § 1125(a)). See **Exhibit A** to Li's Decl. On February 1, 2019, Shinho filed the First Amended Complaint ("FAC"). See **Exhibit B** to Li's Decl. The case was later transferred to this district upon May Flower's motion to transfer venue. See Docket No. 43.

On January 2, 2020, after one and a half year the case was commenced, Shinho filed this eight-count SAC against Defendants. Two additional defendants GB Green and Yao were added in the SAC. See **Exhibit C** to Li's Decl.

It is worth noting that at the time when this action was commenced in July, 2018, the owner of the Cong Ban Lv Mark was Teh-San Sun ("Sun"), the alleged founder of Shinho. OC and FAC at ¶7. On June 28, 2019, after defendant May Flower filed its motion to dismiss the FAC, upon the court-directed Order to Show Cause (Docket No. 63 and No. 64), Shinho

2

submitted a *Nunc Pro Tunc* Trademark Assignment, purportedly transferring all rights in the Cong Ban Lv Mark from Sun to Plaintiff. See **Exhibit D** to Li's Decl.

**ARGUMENT**

## I.      Motion to Dismiss Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); see also *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (no effect given to "legal conclusions couched as factual allegations"). In addition, "bald contentions, unsupported characterizations, and legal conclusions" cannot defeat a motion to dismiss. *Gavish v. Revlon, Inc.*, 2004 WL 22101269, at *10 (S.D.N.Y. Sept. 30, 2004).

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004).

Guided by these principles, Counts I-VIII fail to survive this inquiry and should be dismissed.

## II.     Plaintiff Lacks Standing For Count I, Count II, Count V And Count VIII

Each of the following claims should be dismissed for lack of standing: Count I (Federal Trademark Counterfeiting under 15 U.S.C. § 1114), Count II (Federal Trademark Infringement

3

Claim under 15 U.S.C. § 1114), Count V (Dilution and Injury to Business Reputation under N.Y. General Business Law §360-l), Count VIII (Common Law Trademark Infringement).

Pursuant to 15 U.S.C. § 1114, any person who infringes on a trademark "shall be liable in a civil action by the registrant . . . This cause of action is available . . . only to registrants of the trademarks at issue, a term the [Lanham] Act defines as embracing the actual registrant's legal representatives, predecessors, successors and assigns." *Fed. Treasury Enterp. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013).

"Standing is to be determined as of the commencement of suit" *Fenstermaker v. Obama,* 354 F. App'x 452, 455 n. 1 (2d Cir.2009) *(*quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992)). The Federal Circuit has held that patent or trademark assignees cannot cure statutory-standing defects through mid-litigation patent/trademark assignments. See *Gaia Techs. v. Reconversion Techs.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996) (assignment to Gaia Technologies, Inc., of patent and trademark rights purporting to operate *nunc pro tunc* to a date 'prior to Gaia's filing of the ... suit' was ineffective to cure the jurisdictional defect created by Gaia's lack of standing on the date of commencement of the action), amended on rehearing on other grounds, 104 F.3d 1298 (Fed. Cir. 1996); see also *Alps S. LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, (Fed. Cir. 2015) (the Federal Circuit reversed the district court's denial of a motion to dismiss for lack of standing. The Federal Circuit held that Alps South, LLC did not have standing to bring an infringement action because it was merely an exclusive field of use licensee and a later *nunc pro tunc* license agreement could not correct the defect).

And the courts in the Second Circuit have reached the same conclusion. "Because lack of standing is a jurisdictional defect, a corollary of this rule is that courts cannot consider any amendments to the initial complaint or any post-filing assignments to plaintiffs to determine

whether plaintiffs have standing." *Fenstermaker v. Obama,* 354 F. App'x 452, 455 n. 1 (2d Cir.2009) (declining to consider documents establishing a post-filing relationship in support of third-party standing). Also see *Clarex Ltd. v. Natixis Sec. Am. LLC*, 2012 WL 4849146, at *4-6 (S.D.N.Y. Oct. 12, 2012)(post-filing assignment with retroactive pre-filing effective date did not confer standing on plaintiffs); *Hirsch v. Qingdao Orien Commercial Equip. Co.*, 2015 WL 1014352, at *11 (E.D.N.Y. Mar. 6, 2015) (post-filing stipulation did not cure defects in pre-filing assignment, which was insufficient to confer standing on company's principal to pursue company's claims); *L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 WL 4400532, at *11 (S.D.N.Y. Aug. 15, 2013) (standing must be assessed under the facts existing when the complaint is filed, and a *nunc pro tunc* assignment after the filing of a complaint cannot confer standing retroactively).

A. **The Nunc Pro Tunc Assignment After The Filing Of The Complaint Did not Confer Standing Retroactively**

Here, it is clear from the record that Shinho was not the registrant of the Cong Ban Lv Mark at the commencement of this lawsuit, Teh-San Sun was. See OC at ¶¶7-8. See **Exhibit A** to Li's Decl. Only after defendant May Flower filed its Motion to Dismiss the First Amended Complaint, Shinho, in response to the court-directed Order to Show Cause (Docket No. 63 and No. 64), submitted a Nunc Pro Tunc Trademark Assignment (**Exhibit D** to Li's Decl.) purporting to transfer the Cong Ban Lv Mark to Shinho. As the Federal Circuit held in *Gaia* and *Alps*, and as the district court in 2nd Circuit held in *L'Oreal*, this type of *nunc pro tunc* assignment after the filing of a complaint is unable to cure standing defects.

B. **Shinho Lacked The Standing To Sue As An Exclusive Licensee**

Since the *Nunc Pro Tunc* Assignment should not be recognized by the court, the only issue left is whether Shinho had standing to sue under 15 U.S.C. § 1114 when the lawsuit was

5

commenced. Pursuant to 15 U.S.C. § 1114, any person who infringes on a trademark "shall be liable in a civil action by the registrant . . . This cause of action is available . . . only to registrants of the trademarks at issue…" *Fed. Treasury,* 726 F.3d at 72.

15 U.S.C. § 1127 defines the term "registrant" as embracing the actual registrant's legal representatives, predecessors, successors and assigns. 15 U.S.C. § 1127; *Fed. Treasury,* 726 F.3d at 72.

The term legal representative has been limited to a plaintiff that demonstrates "both its legal authority to represent the owner and that the trademark holder is legally incapable of representing itself." *Id.* In order for a licensee to have standing, a plaintiff "must show that its license amounts, in fact, to an assignment to establish entitlement to sue under [*15 U.S.C. § 1114(1)*]." *Id.* at 78. "Courts in this Circuit look to the terms of the license agreement to determine whether the licensee held a property interest in the mark, becoming effectively an assignee for standing purposes." *L'Oreal USA, Inc. v. Trend Beauty Corp.,* 2013 U.S. Dist. LEXIS 115795, 2013 WL 4400532, at *9 (S.D.N.Y. Aug. 15, 2013).

In *Fed. Treasury Enterp. Sojuzplodoimport v. SPI Spirits Ltd.,* a government-charted Russian entity and its licensee brought a federal trademark action against the purported owners of the trademark "Stolichnaya" and their assignees. Therein, Plaintiffs alleged that they were "legal representatives" of the Russian Federation, the owner of the trademark, by a decree authorizing them to sue to protect the trademark on the Russian Federation's behalf. The District Court dismissed the cause of action for lack of standing because the plaintiffs were not an assign or legal representative, as required under 15 U.S.C. § 1127, of the Russian Federation. *Fed. Treasury,* at 70-71. The Second Circuit court affirmed the dismissal. The Second Circuit found that Fed. Treasury did not have standing as it was not an assignee or legal representative and, more relevantly, that its "exclusive licensee" status was insufficient to equate to an "assignee." It also held that in addition to there not

being a "duly executed instrument in writing" regarding the transfer of rights, the substance of the "exclusive licensee" relationship was insufficient to bestow standing on the plaintiffs. *Id*. at 74, 77-78. Specifically, the Second Circuit held that: . . . Congress could easily have included "licensee" or "exclusive licensee" among the terms in 15 U.S.C. § 1127 that define a "registrant." "It chose instead to limit standing to parties having a more specific set of interests in the registered mark. A plaintiff therefore must show that its 'license' amounts, in fact, to an assignment to establish entitlement to sue under Section 32(1)." *Fed. Treasury,* 726 F.3d at 78, citing 3 McCarthy § 18:5 ("Even though a contract states that it is a 'license,' a court will not be governed by form, and the contract will be upheld as an assignment of trademark rights if that is its actual legal effect."); 3-11 Gilson on Trademarks § 11.02(1) (b) (same).

Similar to the *Fed. Treasury* case, plaintiff Shinho in this case is neither a legal representative of the original registrant Sun nor an assign of the trademark rights.

1. **Shinho is not a "Legal Representative" of Sun for purposes of the Lanham Act**

In this case, in both the Original Complaint and the First Amended Complaint, Shinho alleged that it "is the exclusive licensee and authorized by Mr. Sun to enforce the rights in Plaintiff's Mark in the United States." See OC at ¶8; FAC at ¶8. From the quoted pleading, it appears that Shinho claimed that it was a legal representative for the trademark owner Mr. Sun to enforce the trademark rights in U.S. But to qualify as a legal representative, the court also requires "the trademark holder is legally incapable of representing itself." *Fed. Treasury,* 726 F.3d at 79. Nowhere in the OC, FAC or SAC alleges that Mr. Sun is legally incapable of representing himself and explains why, therefore, Shinho does not qualify as Sun's legal representative.

2. **Shinho is not an "Assign" or its Equivalent under the Lanham Act**

To save its pleading, in SAC, Shinho added allegations that "[o]n July 17, 2018, Teh-San Sun assigned U.S. Trademark Registration No. 4,098,259 for the CONG BAN LV Logo® to Plaintiff. Shandong Shinho recorded this assignment with the United States Patent and Trademark Office on June 27, 2019." SAC at ¶14. This allegation should be disregarded by the court because it is simply a recitation of the *Nunc Pro Tunc* Trademark Assignment, which was executed on June 27, 2019 for the purpose of creating a chain of title retroactively in response to the court-directed Order to Show Cause (Docket No. 63 and No. 64). See **Exhibit D** to Li's Decl. As discussed above, this kind of *Nunc Pro Tunc* assignment was simply not recognized by the courts in Federal Circuit and this Circuit.

Shinho might argue that the *Nunc Pro Tunc* Assignment was used to memorialize a pre-litigation assignment of trademark rights, or Shinho has been granted "all right, title and interest" in the mark as the "exclusive licensee" of Sun. Both of these arguments would fail because to execute an effective assignment under the Lanham Act, it requires (1) duly executed instrument in writing and (2) the assignment to transfer an ownership interest in the marks at issue (15 U.S.C. § 1060 (a)(3); *Fed. Treasury,* 726 F.3d at 73-76), and Shinho's alleged assignment did not satisfy any of these requirements.

First, Shinho did not have any duly executed instrument in writing to suggest that an assignment of trademark rights took place before the litigation. In OC and FAC, only conclusory allegations were asserted, "Plaintiff is the exclusive licensee and authorized by Mr. Sun to enforce the rights in Plaintiff's Mark in the United States" and "Plaintiff as a leading supplier has all right, title and interest in and to the Plaintiff's Mark, and has standing to maintain an action for trademark infringement under U.S. Trademark Statute 15 U.S.C. §1114." OC and FAC at ¶¶8, 18. No written assignment agreement or exclusive license agreement was attached to any version

of the complaints. See OC, FAC or SAC. It is worth noting that in the OC and FAC, Shinho never alleged that it was an assign of the trademark rights at issue. In the SAC, it was the first time Shinho alleged that Sun assigned the Cong Ban Lv trademark to it on July 17, 2018, one day before the litigation was commenced. It is clear that the new allegation in SAC and the *Nunc Pro Tunc* Assignment were only pretexts to create trademark ownership chain of title that did not exist at the commencement of the lawsuit.

Second, since Shinho failed to attach any written assignment agreement or exclusive license agreement to the OC and FAC, it is impossible for the court to evaluate whether the terms of these agreements, if they exist, transferred all the rights in the claimed mark from Sun to Shinho. *Fed. Treasury,* 726 F.3d at 75. Because at the motion to dismiss stage, no outside documents should be considered, we can only assume that these agreements do not exist.

## III.     Count I For Trademark Counterfeit Should Be Dismissed

### A.     Shinho Lacks Standing To Bring The Trademark Counterfeit Claim

As discussed in section II of this brief, Shinho lacks standing to bring this claim under 15 U.S.C. § 1114 because "[t]his cause of action is available . . . only to registrants of the trademarks at issue…" *Fed. Treasury,* 726 F.3d at 72. And the *nunc pro tunc* assignment after the filing of the complaint did not confer standing retroactively.

As to the trademark counterfeit claim that bases on the Cong Ban Lv Trade Dress, since the trade dress is never registered, no one is qualified as the registrant of the trademarks under 15 U.S.C. § 1114, therefore, Plaintiff has not stated a plausible claim under 15 U.S.C. § 1114.

### B.     Even Without The Issue Of Standing, Shinho's Pleading On Trademark Counterfeit Is Still Insufficient

Under section 41 of the Lanham Act, a "counterfeit" mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §

1127. While there is no statutory definition of "spurious", Black's Law Dictionary defines "spurious" as "[d]eceptively suggesting an erroneous origin; fake." *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011). The term "substantially indistinguishable" requires a closer degree of similarity than is required for traditional trademark infringement and, at the very least, closer than the traditional standard for infringement, "colorable imitation." See*, e.g., Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) ("To be substantially indistinguishable, two marks must be 'nearly identical ... with only minor differences which would not be apparent to an unwary observer.' ").

When comparing the alleged counterfeit mark with the registered mark, one must not view the marks in the abstract. *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 2015 WL 4468083, at *2 (S.D.N.Y. July 8, 2015). Rather, the alleged counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser. *Id.* To establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context. *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d at 472.

Plaintiff fails to allege the required elements of a trademark counterfeiting claim because Plaintiff did not register the trade dress and Plaintiff's Cong Ban Lv Mark is distinguishable from Defendant's Small and Big Flower Cong Ban Jiang Mark. Plaintiff tried to claim that Defendants' packaging is substantially indistinguishable from Plaintiff's CONG BAN LV Trade Dress in the SAC. See SAC at ¶20. However, Plaintiff fails to even establish the first element of counterfeit, which is a "registered trade dress." Since Plaintiff did not register the Trade Dress for its packaging, Plaintiff's counterfeiting claim on Trade Dress is without merit and there is no need to discuss the element of "substantially indistinguishable" in Trade Dress.

10

Defendant's mark cannot be a "spurious" mark because it is not a fake mark. In addition, it is not enough only one word "葱" ("Cong") is the same, the font, typeface and context of the marks are totally different: the Chinese size, font and typeface of these marks are different; and Cong Ban Lv means the "companion of scallion" while Cong Ban Jiang means "scallion mixing with/in bean sauce. Moreover, the shape of the flowers and the background underlying the words are different. Therefore, an average purchaser would find that Plaintiff's mark is distinguishable from Defendant's mark.

Similar to *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, where the court held that marks that are similar to the registered mark, but differ by two or more letters, are not likely to be considered counterfeit. See *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007) (Chinese manufacturer's toothpaste box was not substantially indistinguishable from United States manufacturer's toothpaste box containing registered mark, and therefore Chinese manufacturer was not liable on trademark counterfeiting claim; Chinese manufacturer's mark contained a double "dd" in place of United States manufacturer's single "g" in its name, the marks were conspicuously printed in large type on the front of the boxes, and the largest graphical element on each box was also different).

The same is true in this case, at issue there was the use of the name "葱拌酱" ("Cong Ban Jiang") as opposed to "葱伴侣" ("Cong Ban Lv") on soybean paste products. More than two letters are different between the marks in either Chinese or English. It is unlikely that an average purchaser would have found the marks to be substantially indistinguishable. See, e.g., *Montres Rolex*, 718 F.2d at 532 (2d Cir. 1983) (it could not be seriously contended that the average consumer would have found "Amazonas" on shoe heels and soles substantially indistinguishable from "Amazon"; average purchaser would likely not find "Bolivia" watch to be substantially

indistinguishable from "Bulova" watch). Thus, Plaintiff's counterfeiting claim should be dismissed as a matter of law.

## IV.    Count II Federal Infringement Claim Should Be Dismissed For Lack Of Standing

As discussed in section II of this brief, Shinho lacks standing to bring this claim under 15 U.S.C. § 1114 because "[t]his cause of action is available . . . only to registrants of the trademarks at issue…" *Fed. Treasury,* 726 F.3d at 72. And the *nunc pro tunc* assignment after the filing of the complaint did not confer standing retroactively.

## V.    Count III Trade Dress Claim Should Be Dismissed

There is no allegation in the SAC that the Cong Ban Lv Trade Dress is registered. To establish infringement of unregistered trade dress under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)), the plaintiff must generally plead and show: (1) Ownership of the trade dress; (2) the trade dress is non-functional (15 U.S.C. § 1125(a)(3)); (3) the trade dress is distinctive, either inherently or through acquired distinctiveness; and (4) the defendant's use of a trade dress that is likely to cause confusion with plaintiff's trade dress. See *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000).

A viable trade dress infringement claim also requires the plaintiff to "offer a 'precise expression of the character and scope of the claimed trade dress.'" *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F.Appx. 389, 391 (2d Cir. 2003). When the claimed trade dress goes beyond a product's packaging to encompass its design, "courts have been reluctant to extend trade dress protection[.]" *Carson Optical, Inc. v. Prym Consumer USA, Inc.,* 11 F.Supp.3d 317, 340 (E.D.N.Y. 2014); see also *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) ("We exercise particular caution, when extending protection to product designs" (citing *Landscape Forms*, 113 F.3d at 380 (2d Cir. 1997)).

## A.     Character and Scope of Claimed Cong Ban Lv Trade Dress

The claimed Cong Ban Lv Trade Dress here goes beyond product packaging to encompass the product design. Shinho has specified six distinct features that make up the Cong Ban Lv Trade Dress: (a) the green color of the tub container; (b) the yellow color of the container cap; (c) the yellow color stripe across the bottom portion of the front panel of the product label; (d) the predominantly green landscape image, which appears above the yellow color stripe on the front panel of the product label; and (e) the square shaped tub container as shown below. SAC at ¶15. The SAC repeatedly references these features as "distinctive," see *id*. at ¶¶16, 49-50, but does not provide additional details regarding how those features are distinctive.

A trade dress infringement claim lacks the requisite specificity when it contains a "laundry list of the elements that constitute [the type of product]'s design rather than a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive." *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009); *see also Carson Optical, Inc.,* 11 F.Supp.3d at 347 (dismissing a trade dress claim where the complaint specifically listed various elements of the claimed trade dress, but did not explain how the elements were distinctive in relation to that particular type of product).

The description provided in the SAC, though specific in its description of the features that constitute the claimed trade dress, fails to describe the trade dress with the level of detail required to survive a motion to dismiss.

## B.     Functionality

Trade dress protection does not extend to aspects of a product that are functional in nature. *Yurman Design, Inc.,* 262 F.3d at 116 ("A final doctrinal hurdle is the congressionally-imposed requirement that a plaintiff prove that an unregistered trade dress is 'not functional'"). This functionality requirement "protects competition even at the cost of potential customer

13

confusion." *Id*. A product's trade dress is considered "functional if the right to use it exclusively 'would put competitors at a significant non-reputation related disadvantage'… The test of non functionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition." *Id.* (quoting *TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23, 32 (2001)).

"[T]here is a 'statutory presumption that features are deemed functional until proven otherwise by the party seeking trade dress protection,'" *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F.Supp.3d 317, 340 (E.D.N.Y. 2014) (quoting *TrafFix Devices,* 532 U.S. at 29). A claimed "trade dress is functional, and thus not protectable, when it is 'essential to the use or purpose of the article.' A product design is functional when 'certain features of the design are essential to effective competition in a particular market.'" *Cartier, Inc. v. Sardell Jewelry, Inc*., 294 F. App'x 615, 620 (2d Cir. 2008) (citing *Yurman Design, Inc.,* 262 F.3d at 116; *Landscape Forms,* 70 F.3d at 253).

Courts in this Circuit have long held that a product's "features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 30 (2001). Shinho has not made any factual allegations that would overcome this presumption of functionality: the SAC addresses neither the functionality of the specific features that make up the claimed trade dress, nor the effect of the claimed trade dress protection on "effective competition." *See Cartier,* 294 F.App'x. at 620; *Yurman Design,* 262 F.3d at 116 ("in cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage" (internal quotations and marks omitted)). As Shinho has failed to

14

specifically plead that its claimed trade dress is non-functional, its trade dress claim must fail as a result. *See ID7D Co. v. Sears Holding Corp.,* 2012 WL 1247329 at *7 (D.Conn. Apr. 13, 2012) ("The failure to plead non-functionality with factual particularity establishes merely the possibility and not the plausibility of and is therefore fatal to Plaintiff's trade dress claim").

### C.      Secondary Meaning

Even if Shinho had sufficiently described the claimed trade dress and alleged its non-functionality, its trade dress infringement claim would still fail for failure to allege specifically a secondary meaning. "To merit legal protection, a product's trade dress must be both sufficiently distinctive to distinguish its mark from those of others and nonfunctional." *Blumenthal Distrib., Inc. v. Exec. Chair, Inc*., No. CV-10-1280-CBA, 2010 WL 5980151, at *7 (E.D.N.Y. Nov. 9, 2010), *report and recommendation adopted*, No. 10-CV-1280 CBA SMG, 2011 WL 839546 (E.D.N.Y. Mar. 3, 2011) (citing *Le Sportsac, Inc. v. K Mart Co.*, 754 F.2d 71, 75 (2d Cir.1985)). This distinctiveness is established through an "additional showing that its design has acquired 'secondary meaning in the marketplace by which it is identified with its producer or source.'" *Id.* "To determine whether secondary meaning has attached, the court considers the following factors: '(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use.'" *Carson Optical,* 11 F.Supp.3d at 343 (citing *Cartier*, 294 Fed. App'x at 618).

Shinho's SAC specifies that it has used the Cong Ban Lv Trade Dress in commerce since their first use in 2008. SAC at ¶ 17. The SAC also alleges that Shinho has invested extensively in advertising the soybean paste products sold encased in the claimed trade dress and Shinho offers, markets, distributes and sells its soybean paste products encased in the claimed trade dress in over 800 supermarkets across the United States. *Id.* at ¶¶17-18.

However, an extensive and successful history of selling and advertising the product, without more, is not sufficient to demonstrate that the claimed trade dress has secondary meaning for purposes of a trade dress infringement claim. In *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, a manufacturer and marketer of optical products sought trade dress protection, based on the allegedly distinctive ornamental design of a magnifier by the trade name of SureGripTM. 11 F.Supp.3d 317. The plaintiff, Carson Optical, alleged in its complaint that it had successfully sold, marketed and promoted the trade dress for over a decade, including spending substantial sums of money on advertising for the design. *Id.* at 344-345. The district court nonetheless determined that the plaintiff had failed to plead secondary meaning and dismissed the plaintiff's trade dress infringement claims:

> In sum, absent from the pleadings are facts concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue which would support an inference that the trade dress of the SureGripTM acquired secondary meaning. In addition, plaintiffs' general and cursory allegations that Carson has sold, marketed and promoted the SureGripTM trade dress design since 1998, has spent substantial sums of money advertising the product design and that these designs have been a sales and marketing success, with no factual enhancement linking the claimed trade dress to Carson, fail to support an inference that SureGripTM has acquired secondary meaning.

*Id.* (citing *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 445 (S.D.N.Y. 2011); *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599 (RWS), 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012)).

"Substantial sales of a product, if (as here) unaccompanied by a concomitant effort on the seller's part to associate the product's trade dress with the source of the product rather than the product itself, do not establish that a product's trade dress has acquired secondary meaning." *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599, 2013 WL 866867, at *4 n.3 (S.D.N.Y. Mar. 8, 2013); see also *Bristol-Myers Squibb Co. v. McNeil-*

*P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992) ("[Plaintiff] must show that the primary significance of its 'Excedrin PM' trade dress is to identify the source of the product rather than the product itself"). As the SAC does not include any factual allegations that would connect the claimed trade dress to Shinho as the source of the trade dress, rather than simply connecting the trade dress to this particular genre of soybean paste products, Shinho has failed to establish this element of its trade dress infringement claim for motion to dismiss purposes.

> **D.      Likelihood of Confusion**

Since Plaintiff did not properly plead the scope of the trade dress, non-functionality, and secondary meaning, there is no need to discuss the likelihood of confusion element.

**VI.      Count IV and VII Fail to State a Cause of Action for Unfair Competition**

> **A.      The Unfair Competition Claim Under The Lanham Act Fails Because There Is No Valid Trademark Entitled To Protection**

In order to state an unfair competition claim under the Lanham Act, the moving party must "demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion." *Estate of Ellington ex rel. Ellington v. Harbrew Imports, Ltd.*, 812 F.Supp.2d 186, 192 (E.D.N.Y. 2011).

As previously noted in section V of this brief, Plaintiff has not alleged that its trade dress is registered, and Plaintiff has failed to adequately plead that its trade dress is protectable because the claimed trade dress is aesthetically functional, and plaintiff has not pled sufficient facts leading to an reasonable inference that the trade dress has acquired a secondary meaning. Accordingly, plaintiff fails to state a plausible federal unfair competition claim based on trade dress infringement. *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 601 (E.D.N.Y. 2017) ("dismissing federal unfair competition claim after finding that plaintiff failed to plead facts

making it plausible that it had a protectable trademark interest 'whether in the form of an unregistered trademark, valid trade dress or other source of recognized protection'").

Similarly, as to the registered Cong Ban Lv Mark, Plaintiff's pleading has failed to establish a protectable mark.  In order to qualify for trademark protection, a mark must be more than merely generic. "To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *CES Publ'g Corp. v. St. Regus Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975) (internal citations omitted); see also *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009) (Bianco, J.) ("A generic word cannot be validly registered as a trademark.") (internal citation omitted). "Generic marks are never protected, whereas descriptive marks are eligible for protection only when they have acquired distinctiveness or secondary meaning." *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F.Supp.2d 340, 343 (E.D.N.Y. 2007).

The most dominant feature of the Cong Ban Lv Mark is three Chinese characters "葱伴侣," as shown below (SAC at ¶11):



The Chinese characters mean "scallion" (葱) and "companion or mate" (伴侣) in English. Scallion is a generic term for a type of small onion with a long green stem and leaves and

companion or mate is a generic or descriptive term[1] for one of a pair of things that go together or can be used together. Both of these terms would have been disclaimed at the time of application, if the USPTO examiner looked into the English meaning of these characters more thoroughly.

Nowhere in SAC alleges that these generic or descriptive Chinese terms have acquired secondary meaning, thus, the Cong Ban Lv Mark is ineligible for protection.

### B. The Unfair Competition Claim Under Common Law Also Fails Because The Allegation Of "Bad Faith" Is Not Sufficient

The elements of an unfair competition claim under New York common law are identical to the elements of an unfair competition claim under the Lanham Act, except that plaintiff must show bad faith by the infringing party. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey,* 894 F. Supp. 2d 288, 326 (S.D.N.Y. 2012). To recover for common law unfair competition, a "plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief," and must show that there was bad faith. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995). However, "[n]ot every act, even if taken in bad faith, constitutes unfair competition." *CA, Inc. v. Simple.com, Inc.*, 621 F.Supp.2d 45, 53 (E.D.N.Y. 2009).

With respect to the common law unfair competition count (Count VII), Plaintiff's claim also fails because it does not allege that Defendants acted in "bad faith", a requirement for a claim of unfair competition under New York law. Plaintiff merely drops the magic words "bad faith" but has failed to support the allegations with particular facts. Plaintiff's allegations are conclusory and the cause of action should be dismissed. *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317 (E.D.N.Y. 2014) (dismissing unfair competition claim because "plaintiffs' conclusory allegation that defendants copied and reproduced the distinctive

---

[1] Plaintiff sold soybean paste products under this mark. SAC at ¶11.

elements of the Suregrip and sold "knock-off products," without proffering any facts to make that conclusion plausible, is insufficient to establish the bad faith requirement for a cognizable claim under New York law").

## VII. Plaintiff's Dilution and Injury to Business Reputation Claim (Count V) Should be Dismissed

To succeed on a claim for trademark dilution under NYGBL § 360–l, "a plaintiff must prove (1) that it possesses a strong mark, one which has a distinctive quality or has acquired a secondary meaning such that the trade name has become so associated in the public's mind with the plaintiff that it identifies goods sold by that entity as distinguished from goods sold by others, and (2) a likelihood of dilution by either blurring or tarnishment." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F.Supp.2d 207, 241 (S.D.N.Y.2012).

### A. Shinho Lacks Standing To Bring This Cause Of Action

Here, as discussed in section II of this brief, Shinho lacked standing to file a dilution claim. NYGBL § 360–l modeled on the Section 43(c) of the Lanham Act (15 U.S. Code § 1125 (c)) to provide an injunctive relief to the owner of a famous mark that has been diluted. "Section 43(c) of the Lanham Act allows only 'the owner of a famous mark,' to 'be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution." *Prince of Peace Enters. v. Top Quality Food Mkt., LLC*, 760 F.Supp.2d 384, 392-393 (S.D.N.Y.2011) (quoting § 1125(c)(1)). The *Prince of Peace* court also held that "[a]bsent a valid assignment transferring all ownership rights in a mark, even an exclusive licensee and distributor ... is not a mark's 'owner' for purposes of Section 43(c)," *Id.* at 394.

Since the NYGBL § 360–l modeled on the federal anti-dilution statute, it similarly requires the person who files the lawsuit be the owner of the mark and even an exclusive licensee

20

or distributor could not qualify. Because Shinho was not the owner of the mark, the dilution claim should be dismissed for lack of standing.

### B. Shinho Has Not Sufficiently Alleged Either Dilution By Blurring Or Dilution By Tarnishment

Plaintiff has not sufficiently alleged the second element of a trademark dilution claim under state law - "a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 300 (S.D.N.Y. 2003). "Blurring is the process that may occur where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* at 301 (quotations omitted). (emphasis in original). "Tarnishment exists when the plaintiff's mark is linked to products of shoddy quality or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Id.* (quotations omitted). See also *Sly Magazine, L.L.C. v. Weider Pubis. L.L.C.*, 529 F. Supp. 2d 425, 444 (S.D.N.Y. 2007) (dismissing claims).

Here, Plaintiff has not sufficiently alleged either dilution by blurring or dilution by tarnishment. Plaintiff does not allege in their SAC how their mark will lose its ability to serve as a unique identifier of Plaintiff's products. See SAC. Likewise, Plaintiffs do not allege that Defendants' products are of a shoddy quality. *Id.*

Accordingly, Plaintiff's trademark dilution claim must be dismissed.

### VIII. Plaintiff's Deceptive Trade Practices Claim (Count VI) Should Be Dismissed

To plead a prima facie case under Section 349 of the New York General Business Law, a plaintiff must demonstrate that (1) the challenged act or practice was consumer oriented; (2) that it was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the

deceptive act. *Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 558 (S.D.N.Y. 2017) (citing *Merck Eprova AG v. BrookStone Pharms., LLC*, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013)). Corporate competitors have standing to bring a Section 349 claim if "the gravamen of the complaint [is] consumer injury or harm to the public interest." *Sara Designs*, 234 F. Supp. 3d at 558 (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

In *Sara Designs*, the plaintiff—a jewelry designer—brought intellectual property claims against Defendants—corporate competitors for the protection of its proprietary "wrap watch" design, including, *inter alia*, a deceptive practices claim under § 349. In dismissing the count under § 349, the court held that "Plaintiff has alleged no facts supporting an inference of harm to the public interest or consumers outside of harm to its own products and its related property rights." *Id.* at 558. Similar to the plaintiff in *Sara Designs*, Plaintiff here alleges no facts in support of any harm to the public as a result of the purported deceptive practices of Defendants.

In addition, a claim sounding in fraud is subject to a heightened pleading requirement set forth in Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). In SAC, Plaintiff failed to plead with particularity what and how Defendants' practices were deceptive and how these practices caused harm to the public interest or consumers. Accordingly, Count V should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Second Amended Complaint in its entirety with prejudice.


Dated: Queens, New York
         March 10, 2020

Respectfully submitted,

KEVIN KERVENG TUNG, P.C.
*Attorneys for Defendants*

By: Ge    Li, Esq.
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
(718)939-4633

23