UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SHANDONG SHINHO FOOD INDUSTRIES CO.,
LTD.,

                              Plaintiff,

                v.

MAY FLOWER INTERNATIONAL, INC., GB
GREEN GASTRONOME, LLC, and XIAOBO
YAO,

                              Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
19-CV-1621 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Shandong Shinho Food Industries Co., Ltd. ("Shandong Shinho") commenced

the above-captioned action against Defendant May Flower International, Inc. ("May Flower") on

July 18, 2018.  (Compl., Docket Entry No. 1.)  Plaintiff subsequently amended its pleadings

twice, ultimately asserting claims of (1) trademark counterfeiting in violation of section 32(1) of

the Lanham Act, 15 U.S.C. § 1114(1), (2) trademark infringement in violation of section 32(1) of

the Lanham Act, 15 U.S.C. § 1114(1) and the New York common law, (3) trade dress

infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the New

York common law, (4) false designation of origin in violation of section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a), (5) unfair competition under the New York common law, (6) dilution

and injury to business reputation under section 360-*l* of New York General Business Law

("NYGBL"), and (7) deceptive trade practices under section 349 of the NYGBL against

Defendants May Flower, GB Green Gastronome ("GB Green"), and Xiaobo Yao.  (Am. Compl.,

Docket Entry No. 37; Second Am. Compl. ("SAC") ¶¶ 40–72, Docket Entry No. 78.)

Defendants move to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 89; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 89-1.)  For the reasons set forth below, the Court grants Defendants' motion in part and denies it in part.

**I.   Background**

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.

**a.   Plaintiff's trademark and trade dress**

Plaintiff Shandong Shinho is a "leading supplier of specialty Chinese foods, such as bean curd and soybean paste."  (SAC ¶ 11.)  Plaintiff is a limited liability company organized under the laws of the People's Republic of China and has its principal place of business in Longwangzhuang Town, Laiyang, Shandong Province, China.  (*Id.* ¶ 2.)  Plaintiff has "continuously marketed, distributed[,] and sold its soybean paste products in U.S. interstate commerce" since December of 2008.  (*Id.* ¶ 11.)  Plaintiff adopted and is using the design mark of "葱伴侣," which transliterates to "CONG BAN LÜ" or "CONG BAN LV" and translates to "Companion of Scallion" (the "CONG BAN LV Mark").  (*Id.*)  The CONG BAN LV Mark consists of the following elements:

> (a) the Chinese characters: "葱" (Cong), "伴" (Ban) and "侣" (Lv);
> (b) a curved line (or a shape that is similar to a curved line) that intersects a rectangular background design; (c) a flower comprising

---

[1]  The Court granted Defendants leave to answer the SAC pending disposition of the motion to dismiss, (*see* Order dated June 26, 2020), and on July 16, 2020, Defendants answered the SAC, asserting counterclaims for a declaratory judgment pursuant to 28 U.S.C. § 2201 to declare that they do not violate Plaintiff's rights under federal and New York law.  (Answer to SAC ¶ 1, Docket Entry No. 99.)  Defendants also asserted a counterclaim to cancel Plaintiff's mark on grounds of fraud, genericness, and mere descriptiveness, pursuant to the Lanham Act, 15 U.S.C. § 1064.  (*Id.*)

red, orange, yellow and green petal colors; (d) a flower with five petals that intersects a rectangular background design; (e) a rectangular background design with curved edges at the top and bottom; (f) the green color for the rectangular background design; and (g) a white outline of the perimeter of the rectangular background.

(*Id.* ¶ 12.)  The CONG BAN LV Mark is pictured below:



(*Id.* ¶ 11.)  On March 29, 2011, Plaintiff's founder, Teh-San Sun, applied to register the CONG BAN LV Mark with the U.S. Patent and Trademark Office (the "USPTO"), and on February 14, 2012, the mark was registered under Registration No. 4,098,259.  (*Id.* ¶ 13.)  Plaintiff states that the mark is "incontestable by operation of law" and covers "food seasonings; sauces; [and] soy bean paste" in International Class 30.  (*Id.*)  On July 5, 2018, a Declaration of Use and/or Excusable Nonuse under section 8 of the Lanham Act was filed.  (*Id.*)  On June 27, 2019, Plaintiff recorded with the USPTO a *nunc pro tunc* assignment of the CONG BAN LV Mark to Plaintiff with an effective date of July 17, 2018 (the "Assignment").  (*Id.* ¶ 14; Trademark Assignment Cover Sheet ("Trademark Assignment") 1, annexed to Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n") as Ex. A, Docket Entry No. 90-2.)[2]

---

[2]  Defendants argue that the Court may not consider documents that are not annexed to the SAC, such as the 2008 exclusive license agreement (the "License Agreement") with Sun, (*see* License Agreement, annexed to Pl.'s Opp'n as Ex. B, Docket Entry No. 90-3), because Plaintiff "did not have any duly executed instrument in writing to suggest that an assignment of trademark rights took place before the litigation" and "at the motion to dismiss stage, no outside documents should be considered."  (Defs.' Mem. 8.)  However, the Court considers the Assignment and the License Agreement because these documents are integral to the SAC.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit

Plaintiff produces, markets, and sells its CONG BAN LV soybean paste products in connection with its "well-known and distinctive" CONG BAN LV trade dress (the "CONG BAN LV Trade Dress") consisting of:

> (a) the green color of the tub container; (b) the yellow color of the container cap; (c) the yellow color stripe across the bottom portion of the front panel of the product label; (d) the predominantly green landscape image, which appears above the yellow color stripe on the front panel of the product label; and (e) the square shaped tub container . . . .

(*Id.* ¶ 15.) The CONG BAN LV Trade Dress is pictured below:

---

or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (alteration in original) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

A court may consider a document "'integral' to the complaint" when "the complaint 'relies heavily upon its terms and effect.'" *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) ("A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms and effect.'" (quoting *Chambers*, 282 F.3d at 153)); *Lopez v. Adidas Am., Inc.*, No. 19-CV-7631, 2020 WL 2539116, at *6 (S.D.N.Y. May 19, 2020) (quoting *Chambers*, 282 F.3d at 153). The Assignment is explicitly referenced in the SAC. (SAC ¶ 14 (discussing Sun's assignment of the CONG BAN LV Mark to Plaintiff).) In addition, although the License Agreement is not explicitly referenced in the SAC, Plaintiff mentions its "exclusive" intellectual property rights in the CONG BAN LV Mark several times throughout the SAC, (*id.* ¶¶ 36, 45, 49), which suggests that Plaintiff relies heavily upon the Licensing Agreement's "terms and effect," *see Nicosia*, 834 F.3d at 234 (finding an "order page" and "conditions of use" agreement integral to the complaint when the complaint contained numerous references to them); *19 Recordings Ltd. v. Sony Music Ent.*, No. 14-CV-1056, 2016 WL 5408167, at *3 (S.D.N.Y. Sept. 28, 2016) (finding streaming license agreement integral to the complaint because plaintiff's breach of contract claim "turns on how 'the exploitation' is 'so described in the licenses or other agreements'" between the parties (citation omitted)); *A + E Television Networks, LLC v. Wish Factory Inc.*, No. 15-CV-1189, 2016 WL 8136110, at *3 (S.D.N.Y. Mar. 11, 2016) (finding a license agreement is both incorporated by reference and integral to the complaint because plaintiff asserted that defendant is not entitled to payment pursuant to the license agreement and noting that the parties do not dispute the agreement's authenticity). Accordingly, the Court considers the Assignment and the License Agreement.



(*Id.*)  Plaintiff states that the CONG BAN LV Trade Dress "serves to readily distinguish Shandong Shinho's CONG BAN LV products from those of its competitors."  (*Id.* ¶ 16.) Plaintiff has "continuously used the CONG BAN LV [Mark] and the CONG BAN LV Trade Dress since their first use in U.S. commerce."  (*Id.* ¶ 17.)  Plaintiff features its soybean paste products sold under the CONG BAN LV Mark and encased in the CONG BAN LV Trade Dress in "advertising and in other materials" including "on its website . . . , in catalogs, in print advertisements, in presentations[,] and in other marketing materials."  (*Id.*)  Plaintiff also "offers, markets, distributes[,] and sells its soybean paste products under the CONG BAN LV [Mark] and encased in the CONG BAN LV Trade Dress in over 800 supermarkets across the United States," including in both Chinese supermarkets and "mainstream supermarkets, such as Kroger."  (*Id.* ¶ 18.)  Plaintiff's soybean paste products sold under the CONG BAN LV Mark and CONG BAN LV Trade Dress are "currently available and sold to many consumers in many countries throughout the world, including in 209,859 retail stores in China."  (*Id.*)

Plaintiff states that its sales of the CONG BAN LV soybean paste products "have been tremendous and Shandong Shinho is recognized as an established and reputable business in the market of sauce and soybean paste products."  (*Id.*)  The CONG BAN LV Mark and CONG BAN LV Trade Dress are "known by the consuming public as identifying and distinguishing [Plaintiff's] soybean paste products from those of its competitors."  (*Id.*)

**b.    Defendants' logos and products**

Plaintiff alleges that "at some point during the relationship between [Plaintiff] and May Flower, May Flower surreptitiously developed its own logos and packaging identical or substantially indistinguishable from the CONG BAN LV [Mark] and the CONG BAN LV Trade Dress for its own soybean paste products."  (*Id.* ¶ 19.)  May Flower has two versions of its logos that both consist of the Chinese characters "葱拌酱," which transliterate to "Cong Ban Jiang" and translate to "Scallion Mixing With Bean Sauce."  (*Id.*)  One design contains a small flower (the "Small Flower CONG BAN JIANG Logo") as depicted below:



(*Id.*)  The other design contains a big flower (the "Big Flower CONG BAN JIANG Logo") as depicted below:



(*Id.*)  May Flower "produces, markets, offers[,] and sells its soybean paste products in connection with product packaging" that Plaintiff alleges is "confusingly similar" to the CONG BAN LV Trade Dress.  (*Id.* ¶ 20.)  May Flower's trade dress (the "CONG BAN JIANG Trade Dress") is described as:

> (a) the green color of the tub container; (b) the yellow color of the
> container cap; (c) the yellow color stripe across the bottom portion

of the front panel of the product label; (d) the predominantly green landscape image which appears above the yellow color stripe on the front panel of the product label; and (e) the square shaped tub container . . . .

(*Id.*)  May Flower's Small Flower Trade Dress is pictured below:



(*Id.*)  May Flower's Big Flower Trade Dress is pictured below:



(*Id.*)  Plaintiff also alleges that May Flower's sealing film displays a similar logo (the "Sealing Film Logo") that consists of the Chinese characters "菜伴酱," which transliterate to "Cai Ban Jiang" and translate to "Bean Sauce for Vegetables," and is depicted below:



(*Id.* ¶ 21.)

May Flower's soybean paste products feature the Small Flower and Big Flower CONG BAN JIANG Logos, Small Flower and Big Flower CONG BAN JIANG Trade Dress, and the Sealing Film Logo on its packaging and "in marketing materials for those products."  (*Id.* ¶ 22.) May Flower markets and sells its products through third-party grocery stores, retailers, and

online, "including in some of the exact same stores that [Plaintiff] offers and sells its CONG

BAN LV soybean paste products." (*Id.*; *see also* Photo of Soybean Paste Products at Store,

annexed to SAC as Ex. B, Docket Entry No. 78-2.)[3]  Plaintiff asserts that May Flower's products

are "directly competitive with the soybean paste products offered and sold" by Plaintiff and are

"substantially indistinguishable from and confusingly similar to" Plaintiff's CONG BAN LV

Mark and Trade Dress. (*Id.* ¶ 23.)

       Prior to filing the SAC, Plaintiff "retained a survey expert who surveyed over 800

respondents who shop in Chinese grocery stores in order to measure the likelihood of confusion

between" Plaintiff's products containing the CONG BAN LV Mark and May Flower's products

containing the Small Flower and Big Flower CONG BAN JIANG Logos. (*Id.* ¶ 25.)  Plaintiff's

survey "revealed that [eighty percent] of survey respondents were confused" between Plaintiff's

CONG BAN LV Mark and May Flower's Small Flower CONG BAN JIANG Logo and seventy-

eight percent were confused between Plaintiff's CONG BAN LV Mark and May Flower's Big

Flower CONG BAN JIANG Logo. (*Id.*; *see also* Likelihood of Confusion Study Summ. ("Study

Summ."), annexed to SAC as Ex. D, Docket Entry No. 78-4.)

       Plaintiff alleges that May Flower adopted the Small Flower and Big Flower CONG BAN

JIANG Logos, the CONG BAN JIANG Trade Dress, and the Sealing Film Logo "sometime

during May Flower's relationship with [Plaintiff], after May Flower had enough competitive

information from [Plaintiff] to unfairly attempt to usurp [Plaintiff's] business." (*Id.* ¶ 26.)  Once

---

     [3]  Plaintiff asserts that the photograph depicts "Shandong Shinho's and May Flower's respective soybean paste products being offered right next to one another on store shelving at the Jusgo Supermarket, 9280 Bellaire Blvd., Houston, TX 77036 and at Kam Man Food, 511 Old Post Rd. & Rt. 1, Edison, NJ 08817." (SAC ¶ 22.)  However, only one photograph is provided and it is unclear whether this photograph depicts the products at the Texas store location or the New Jersey store location. (Photo of Soybean Paste Products at Store.)

Plaintiff discovered the CONG BAN JIANG products, Plaintiff asked May Flower to "investigate who was committing the infringement." (*Id.*) Plaintiff alleges that May Flower "concealed its involvement by representing that another party was producing and selling the infringing CONG BAN JIANG products," "deceived [Plaintiff] into believing that it was actually addressing the infringement, and tried to dissuade [Plaintiff] from taking any further action." (*Id.*)

In order to "disguise its infringing and counterfeit enterprise," May Flower filed a trademark application in the names of GB Green and Xiaobo Yao. (*Id.* ¶ 27.) GB Green filed a trademark application (the "GB Green Application") for a logo comprising the Chinese characters "葱拌酱," which transliterate to CONG BAN JIANG and translate to "Scallion Mixing With Bean Sauce." (*Id.*) The GB Green Application was for the logo's use in connection with a "variety of sauce products as well as in connection with 'steamed buns stuffed with red bean paste.'" (*Id.*) The GB Green Application was submitted for the below logo:



(*Id.*) On August 1, 2018, GB Green submitted a specimen of soybean sauce products to the USPTO depicting use of the logo covered by the GB Green Application. (*Id.* ¶ 28.) GB Green also produces, offers, and sells "its own food products under well-known Chinese brands owned by third parties" and applied to register "well-known brands owned by Tingyi Hold Corporation, Beijing Daoxiangcun Foodstuff Co. Ltd, Liuzhou Haohuanluo Food Co., Ltd and Guangxi Luobawang Food Co., Ltd." (*Id.* ¶ 34.)

Defendant Xiaobo Yao "is an individual who is related to May Flower and has an address similar to May Flower's address." (*Id.* ¶ 29.) On January 25, 2018, Yao filed a trademark

application (the "Yao Application") for a logo containing the Chinese characters "葱拌酱,"
which transliterate to CONG BAN JIANG and translate to "Scallion Mixing With Bean Sauce."
(*Id.* ¶ 29.)  The Yao application was filed for the mark depicted below:



(*Id.*)  The Yao Application was filed "in connection with 'bean paste'; 'seasoned bean paste';
and 'soy bean paste' as well as other sauce and paste products in International Class 30."  (*Id.*)
On January 25, 2018, and May 24, 2018, Yao filed specimens with the USPTO featuring
soybean sauce products that "contained a logo substantially indistinguishable" from Plaintiff's
CONG BAN LV Mark and were "encased in packaging that is substantially indistinguishable
from" Plaintiff's CONG BAN LV Trade Dress.  (*Id.* ¶ 30.)  The specimen is depicted below:



(*Id.*)

On September 15, 2015, Yao filed a trademark application for a logo (the "Yao Logo")
containing the Chinese characters "葱拌酱," which transliterate to CONG BAN JIANG and
translate to "Scallion Mixing With Bean Sauce."  (*Id.* ¶ 31.)  The logo was filed "in connection
with 'bean paste'; 'miso bean paste'; 'seasoned bean paste'; 'seasoning pastes'; 'soy bean paste';
and 'soya bean paste.'"  (*Id.*)  The logo is depicted below:



(*Id.*)  On the same day, Yao also filed a specimen showing a soybean paste product "encased in packaging that is substantially indistinguishable from" Plaintiff's CONG BAN LV Trade Dress. (*Id.* ¶ 32.)

Plaintiff alleges that the use of the Small Flower and Big Flower CONG BAN JIANG Marks, the Sealing Film Logo, the CONG BAN JIANG Trade Dress, and the marks covered by the GB Green Application, the Yao Application, and the Yao Logo are "likely to continue to cause confusion, mistake[,] or deception" regarding the "origin, source, and sponsorship of their products."  (*Id.* ¶ 36.)  Plaintiff "has suffered, and will continue to suffer, irreparable injury to its distinctive CONG BAN LV [Mark] and CONG BAN LV Trade Dress and to the goodwill and business reputation" associated with them.  (*Id.* ¶ 38.)

### c.   Procedural background

On July 18, 2018, Plaintiff commenced this action in the Southern District of Texas, (Compl.), and May Flower moved to dismiss the Complaint, (Defs.' Mot. to Dismiss, Docket Entry No. 23).  After Plaintiff filed an Amended Complaint, (*see* Am. Compl.), May Flower's motion to dismiss was terminated and a jury trial was scheduled, (*see* Min. Entry dated Feb. 1, 2019; Scheduling Order dated Feb. 1, 2019, Docket Entry No. 38).

Throughout 2019, May Flower and Harry Li and "Captain Liu" — "two individuals acting in concert with May Flower" — filed several petitions to cancel and two notices of opposition with the U.S. Trademark Trial and Appeal Board (the "TTAB") "against [Plaintiff's]

U.S. trademark applications and registrations."[4]  (SAC ¶ 33 (listing TTAB proceedings).)  The TTAB granted several of Sun's motions to dismiss and stayed the other proceedings pending the outcome of this action.  (*Id.*)

On February 22, 2019, May Flower moved to transfer the case to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), and on March 20, 2019, the case was transferred. (*See* Mot. to Transfer Case, Docket Entry No. 43; Order Granting Mot. to Transfer Case, Docket Entry No. 48.)

On June 14, 2019, the Court ordered Plaintiff to show cause why its trademark infringement claim against May Flower should not be dismissed for lack of standing.  (Order to Show Cause dated June 14, 2019 (citing *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 77–78 (2d Cir. 2013) ("A plaintiff . . . must show that its 'license' amounts, in fact, to an assignment to establish entitlement to sue under [15 U.S.C. § 1114].")).)  In the alternative, Plaintiff was directed to file a second amended complaint that "plausibly allege[d] facts sufficient to support its statutory standing to sue under 15 U.S.C. § 1114."  (*Id.*)  Plaintiff responded, arguing that it had standing to sue under 15 U.S.C. § 1114(1) as an exclusive licensee of the CONG BAN LV Mark, but "with the intention of conserving valuable judicial resources

---

[4]  *See May Flower Int'l v. Sun*, No. 92072917 (T.T.A.B. Jan. 5, 2021) (suspending proceeding pending disposition of civil action); *May Flower Int'l v. Sun*, No. 92072769 (T.T.A.B. Jan. 5, 2021) (suspending proceeding pending disposition of civil action); *May Flower Int'l, Inc. v. Sun*, No. 92072841 (T.T.A.B. Sept. 24, 2020) (denying motion for summary judgment and suspending further proceedings pending disposition of this civil action); *May Flower Int'l, Inc. v. Sun*, No. 92072865 (T.T.A.B. July 16, 2020) (suspending proceeding pending disposition of this civil action); *May Flower Int'l, Inc. v. Shandong Shinho Food Indus. Co.*, No. 91252185 (T.T.A.B. Feb. 25, 2020) (suspending opposition proceeding pending disposition of federal case); *Li v. Sun*, No. 91246143 (T.T.A.B. May 9, 2019) (dismissing proceeding); *Li v. Sun*, No. 92070509 (T.T.A.B. Apr. 23, 2019); *Li v. Sun*, No. 92070528 (T.T.A.B. Apr. 22, 2019) (dismissing proceeding); *Captain Liu v. Sun*, No. 92069339 (T.T.A.B. May 13, 2020) (suspending proceeding pending disposition of civil action).

and avoiding unnecessary litigation and expenditure by the parties," Sun "duly executed and recorded" an assignment of the CONG BAN LV Mark to "memorializ[e] his grant of full ownership" of the CONG BAN LV Mark to Plaintiff. (Resp. to Order to Show Cause 1, Docket Entry No. 64.) Plaintiff argued that while "some courts may find certain nunc pro tunc trademark assignments insufficient to confer standing under § 1114(1)," the transfer at issue in this case is distinguishable because it "reflect[ed] a transfer of title between parties comprised of people with substantially identical interests and for which the underlying business remains substantially unchanged." (*Id.* at 1–2.) On December 20, 2019, the Court granted leave to file the SAC and on January 2, 2020, Plaintiff filed the SAC. (*See* Order dated Dec. 20, 2019; SAC.)

In the SAC, Plaintiff seeks (1) a preliminary and permanent injunction enjoining Defendants from (a) producing, importing, distributing, offering for sale, and selling any products bearing the allegedly infringing marks and trade dress, or authorizing any third party to do the same; (b) "making or displaying any statement or representation that is likely to" mislead the public that Defendants' products bearing the allegedly infringing marks and trade dress are "in any manner associated or affiliated with" Plaintiff; (c) diluting the quality of Plaintiff's CONG BAN LV Mark and CONG BAN LV Trade Dress; (d) engaging in any other activity constituting unfair competition with Plaintiff; and (e) aiding, assisting, or abetting any other party in doing any of the stated acts; (2) recall of any and all products bearing the allegedly infringing marks or trade dress; (3) delivery for destruction of all products bearing the allegedly infringing marks; (4) any other relief to "prevent the trade and public from deriving the erroneous impression that any product or service" related in any way to Defendants is authorized by Plaintiff "or related in any way to Plaintiff's soybean paste products"; (5) an oath from Defendants within thirty days after the entry of judgment setting forth the manner and form in

which Defendants have complied; (6) an award of statutory damages and "all gains, profits, property and advantages derived by Defendants from such conduct[] and, pursuant to 15 U.S.C. § 1117, up to three times the amount of the actual damages sustained "as a result of Defendants' violations of the Lanham Act and its counterfeiting activities"; (7) exemplary and punitive damages; (8) costs and disbursements incurred by Plaintiff in this action, including attorneys' fees; and (9) pre-judgment interest. (*Id.* at 23–26.)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

b.  **Plaintiff lacks standing to pursue its trademark counterfeiting and infringement claims under section 1114(1) of the Lanham Act and trademark dilution claim pursuant to section 360-*l* of the NYGBL**

i.  **Trademark counterfeiting and infringement claims under section 1114(1)**

Defendants argue that Plaintiff lacks standing to pursue claims for trademark counterfeiting and trademark infringement under section 1114(1) of the Lanham Act.[5]  (Defs.' Mem. 3–5.)  In support, Defendants argue that (1) Sun, not Plaintiff, was the registrant of the CONG BAN LV Mark at the commencement of the lawsuit, (2) Sun's *nunc pro tunc* assignment of the CONG BAN LV Mark to Plaintiff did not suffice to confer standing, and (3) Plaintiff is neither a legal representative of Sun nor an assignee of the trademark rights under the Lanham Act.  (*Id.* at 3–9.)

Plaintiff argues that it has sufficiently pled standing.  (Pl.'s Opp'n 5–6, Docket Entry No. 90.)  Plaintiff asserts that (1) it did not have to be the registrant to have standing to sue under

---

[5]  Although Defendants briefly mention that they move to dismiss Plaintiff's claim for common law trademark infringement for lack of standing, the entirety of Defendants' standing arguments concern whether Plaintiff is a registrant or assignee as is required to sue under section 1114(1) of the Lanham Act.  (*See* Defs.' Mem. 3–9; Defs.' Reply 2–7.)  Defendants fail to state why they believe Plaintiff does not have standing to bring its claims under the common law, which does not require Plaintiff to be a registrant or an assignee to pursue a claim.  *See Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 418 (2d Cir. 2018) ("Common law trademark rights derive from 'initial appropriation and use [] accompanied by an intention to continue exploiting the mark commercially.'" (alteration in original) (quoting *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974))); *Off-White LLC v. 24 Hours Delivery Store*, No. 20-CV-5194, 2020 WL 4365477, at *1 (S.D.N.Y. July 30, 2020) (finding that the "[p]laintiff gained significant common law trademark and other rights in its . . . [marks] through its use, advertising and promotion"); *Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 552 (E.D.N.Y. 2019) ("Common law trademark rights derive from 'initial appropriation and use [] accompanied by an intention to continue exploiting the mark commercially.'" (quoting *Excelled Sheepskin & Leather Coat Corp.*, 897 F.3d at 418)).  Accordingly, the Court construes Defendants' motion to solely challenge standing for Plaintiff's claims brought under section 1114(1) of the Lanham Act and not to challenge Plaintiff's assertion of its common law rights in the CONG BAN LV Mark.

section 1114(1) of the Lanham Act because it has "interests coextensive with the registrant," (2) Sun's *nunc pro tunc* assignment "memorialize[d] Plaintiff's preexisting statutory standing," and (3) Plaintiff had standing for all its claims as an exclusive licensee.  (*Id.* at 5–10.)

For the reasons stated below, the Court finds that Plaintiff does not have standing to sue under section 1114(1) of the Lanham Act.

### 1.  Standing as *nunc pro tunc* assignee

Defendants argue that pursuant to section 1114(1) of the Lanham Act, only registrants of the trademarks at issue, including "the actual registrant's legal representatives, predecessors, successors[,] and assigns," have standing to sue for infringement.  (Defs.' Mem. 4 (quoting *Fed. Treasury Enter. Sojozplodoimport*, 726 F.3d at 72).)  Defendants assert that standing is determined "as of the commencement of suit" and mid-litigation assignments "cannot cure statutory[] standing defects."  (*Id.* (quoting *Fernstermaker v. Obama*, 354 F. App'x 452, 455 n.1 (2d Cir. 2009)).)  In support, Defendants rely on *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779–80 (Fed. Cir. 1996), in which the Federal Circuit held that a mid-litigation *nunc pro tunc* assignment of patent and trademark rights was "ineffective to cure the jurisdictional defect created by [plaintiff's] lack of standing on the date of the commencement of the action."  (*Id.*)  In addition, Defendants argue that courts in the Second Circuit have reached the same conclusion and because Plaintiff was not the registrant at the time this litigation commenced, Plaintiff does not have standing.  (*Id.* at 4–5.)

Plaintiff argues that while it was not the registrant of the CONG BAN LV Mark at the time of the filing of its Complaint, it has "always maintained statutory standing to bring its claims under § 1114(1)" because the term "registrant" includes the registrant's "legal representatives, predecessors, successors[,] and assigns."  (Pl.'s Opp'n 6 (quoting 15 U.S.C.

§ 1127).)  Plaintiff asserts that *Gaia Technologies* is inapposite because that case deemed *nunc pro tunc* assignments "insufficient to confer statutory standing where they are 'at most . . . a memorialization of an agreement to sell all assets of [registrant] to [plaintiff] at some time in the future,'" (*id.* at 7 (alterations in original) (quoting *Gaia Techs., Inc.*, 93 F.3d at 779–80)), and because courts have factually distinguished *Gaia Technologies* when the assignment "reflects a transfer of title between parties comprised of people with substantially identical interests and for which the underlying business remains substantially unchanged," (*id.* at 9).  In support, Plaintiff relies on *Malovani v. Doe*, No. 11-CV-787, 2012 WL 12886493, at \*4 (C.D. Cal. May 14, 2012) in which the court held that standing concerns "do not apply in the context of an individual and his one-man shop" because "title could have been transferred easily from one to the other without any chain of title issues." (*Id.* at 9–10 (quoting *Malovani*, 2012 WL 12886493, at \*4).) Plaintiff argues that unlike the *nunc pro tunc* assignment at issue in *Gaia Technologies*, the Assignment "reflects a preexisting transfer of title between parties with virtually identical interests and for whom the underlying business remained virtually unchanged."  (*Id.* at 7.)  In addition, Plaintiff asserts that it "has always used the CONG BAN LV [Mark] effectively as 'assignee, who stands in the shoes of the assignor,'" and is similarly a case of "an individual and his 'one man shop'" like the plaintiff in *Malovani*.  (*Id.* at 9–10 (first quoting *Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 75; and then quoting *Malovani*, 2012 WL 12886493, at \*4) (citing SAC ¶ 13).)

Under 15 U.S.C. § 1114(1), "any person who infringes on a trademark 'shall be liable in a civil action *by the registrant*.'"  *Sream v. Saakshi Enters. Inc*, No. 16-CV-1408, 2017 WL 2633510, at \*3 (E.D.N.Y. June 15, 2017) (quoting *Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 72).  "This cause of action is available . . . only to 'registrant[s]' of the trademarks at

issue, a term the [Lanham] Act defines as embracing the actual registrant's 'legal representatives, predecessors, successors, and assigns.'" *Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 72 (alteration in original) (quoting 15 U.S.C. § 1127). "In other words, only registrants — as statutorily defined — have 'statutory standing' to bring an action under [s]ection [1114]." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (distinguishing statutory standing to sue under section 1114(1) of the Lanham Act from section 1125(a) of the Lanham Act, which allows suits "'by *any person* who believes that he or she is or is likely to be damaged' by the defendant's actions."[6] (quoting 15 U.S.C. § 1125(a)(1))). Standing is determined "as of the commencement of suit." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 n.3 (Fed. Cir. 2010) ("While [plaintiff] filed an amended complaint on November 16, 2007, we look to the date of the original [c]omplaint . . . because 'the jurisdiction of the [c]ourt depends on the state of things at the time of the action brought.'" (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993))); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 n.3 (Fed. Cir. 2005) ("The initial standing of the original plaintiff is assessed at the time of the original complaint, even if the complaint is later amended."); *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11-CV-4187, 2013 WL 4400532, at *12 (S.D.N.Y. Aug. 15, 2013) (stating, in case involving lack of standing to bring trademark infringement claim, that "a declaration executed after the commencement of this action cannot serve as the basis for standing"); *ID7D Co. v. Sears Holding Corp.*, No. 11-CV-1054, 2012 WL 1247329, at *3 (D. Conn. Apr. 13, 2012) (noting in patent-infringement-suit

---

[6] The parties do not address whether the SAC relates back to the date of the filing of the original Complaint under Rule 15(c) of the Federal Rules of Civil Procedure. However, because the dispute regarding standing involves a *nunc pro tunc* trademark assignment, the issue of whether the SAC relates back does not affect the outcome of this case.

context that "standing is to be determined as of the commencement of suit" (quoting *Paradise*

*Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2013))).

There is no dispute that Sun — not Plaintiff — is the registrant of the CONG BAN LV

Mark.  (*See* Defs.' Mem. 5 (stating that Plaintiff "was not the registrant of the [CONG BAN LV]

Mark at the commencement of this lawsuit, Teh-San Sun [is]"); Pl.'s Opp'n 6 (arguing that

Plaintiff has standing despite "not [being] the registrant of the CONG BAN LV [Mark] at the

time of filing its complaint").)  Accordingly, the issue before the Court is whether Sun's *nunc*

*pro tunc* assignment of the CONG BAN LV Mark to Plaintiff after this litigation commenced but

before the SAC was filed is sufficient to confer statutory standing on Plaintiff.

The parties do not cite any Second Circuit cases — and this Court is aware of none —

that address whether *nunc pro tunc* assignment of a registered mark confers standing upon the

assignee to sue.  As Defendants note, the Federal Circuit has addressed this issue in *Gaia*

*Technologies, Inc.*, 93 F.3d at 774 and more recently, in the patent infringement context, in *Alps*

*South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379 (Fed. Cir. 2015).  In *Gaia Technologies*,

the Federal Circuit held that a *nunc pro tunc* assignment of patent and trademark rights did not

confer standing on the plaintiff retroactively because the plaintiff "failed to come forward with

the requisite evidence necessary to establish that an assignment, in writing . . . took place before

the lawsuit was filed."  *Id.* at 780 ("[P]arties should possess rights before seeking to have them

vindicated in court.  Allowing a subsequent assignment to automatically cure a standing defect

would unjustifiably expand the number of people who are statutorily authorized to sue." (quoting

*Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995))).

In *Alps South*, the Federal Circuit reiterated its holding that "[t]he party asserting patent

infringement is 'required to have legal title to the patents on the day it filed the complaint and

that requirement [cannot] be met retroactively.'" *Alps South, LLC*, 787 F.3d at 1385 (quoting *Abraxis*, 625 F.3d at 1366). Similarly, other courts that have considered the issue, including at least two district courts within the Second Circuit, have recognized the principle that a *nunc pro tunc* assignment after commencement of a suit cannot retroactively confer standing. *Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19-CV-9035, 2019 WL 6681563, at *9 n.8 (S.D.N.Y. Dec. 6, 2019) ("A party may not cure a standing defect by a '*nunc pro tunc*' assignment of rights that occurs after a plaintiff has filed suit." (quoting *Alps South, LLC*, 787 F.3d at 1384)); *L'Oreal USA, Inc.*, 2013 WL 4400532, at *4 ("[A] *nunc pro tunc* assignment after the filing of a complaint cannot confer standing retroactively." (citing *Lujan*, 504 U.S. at 570 n.5)); *see also Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 806 n.4 (5th Cir. 2020) ("We note, however, that *Gaia* [*Technologies*] did apply its holding to an accompanying trademark-infringement claim and that an authoritative trademark treatise has cited *Gaia* [*Technologies*] for the proposition that '[i]f plaintiff is not the owner of the mark at the time suit was filed, that defect cannot be cured by a later assignment.'" (quoting 6 McCarthy on Trademarks and Unfair Competition § 32:3 (5th ed. 2019))); *Cave Man Kitchens Inc. v. Caveman Foods LLC*, No. 18-CV-1274, 2020 WL 6874238, at *4 (W.D. Wash. Nov. 23, 2020) (relying on *Gaia Technologies* to hold that a *nunc pro tunc* assignment did not confer statutory standing to sue because it "merely reflects that an alleged *oral* agreement was made . . . , not that any type of writing was executed on that date"). In addition, a court in the Central District of California confronted a similar issue in deciding whether to allow a plaintiff to submit a supplemental pleading to cure the standing defects in its patent infringement counterclaim pursuant to Rule 15(d) of the Federal Rules of Civil Procedure. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. 02-CV-1087, 2007 WL 9723465, at *14 (C.D. Cal. July 24, 2007). In

that case, the court found that the defendant did not have standing to bring its patent

infringement counterclaim because it "relies on a subsequent [*nunc pro tunc* assignment]

agreement." *Id.* at *12.  The *Revolution Eyewear* court found that although some courts,

including the Federal Circuit in which *Gaia* was decided, have found that Rule 15(d) of the

Federal Rules of Civil Procedure may allow a party to "cure a lack of Article III standing by

filing a supplemental complaint" if the court determines that it would be in the interest of justice,

allowing plaintiff to cure its standing defect retroactively in the patent infringement context

would "circumvent" *Gaia Technologies*' principle that *nunc pro tunc* assignments are not

sufficient to confer retroactive standing.  *Id.* at *14.  The court denied leave to amend stating that

allowing such amendments to cure standing defects in the patent infringement context would

result in the concerns articulated in *Gaia Technologies* — that the judiciary would be

"enmesh[ed] . . . in abstract disputes, risk multiple litigation, and provide incentives for parties to

obtain assignments in order to expand their arsenal and the scope of litigations."  *Id.* (quoting

*Gaia Technologies*, 93 F.3d at 780).

Plaintiff's argument that the Assignment "only memorializes what Plaintiff has already

pleaded — [that] Plaintiff has always used the CONG BAN LV [Mark] effectively as 'assignee,

who stands in the shoes of the assignor,'" (Pl.'s Opp'n 9 (quoting *Fed. Treasury Enter.

Sojuzplodoimport*, 726 F.3d at 75)), is unpersuasive.  For the reasons discussed below, Plaintiff's

2008 License Agreement with Sun, (*see* License Agreement, annexed to Pl.'s Opp'n as Ex. B,

Docket Entry No. 90-3), does not function as an assignment.  Similarly unpersuasive is

Plaintiff's argument that retroactive assignment of the mark from a non-party registrant assignor

to the plaintiff-assignee can confer standing when there is no dispute between the owner and

transferee and when the owner operates a "one-man shop."  (Pl.'s Opp'n 9–10 (quoting

*Malovani*, 2012 WL 12886493, at *4).)  For example, Plaintiff relies on *Malovani*, an inapposite case, in which the court held that *nunc pro tunc* assignment of a trademark may confer standing because "there is no dispute between the . . . owner and transferee" and "it would be unusual and unwarranted to permit a third-party infringer to [require transfers to be in writing] to avoid suit for . . . infringement," especially in the case of "an individual and his 'one-man shop.'"  2012 WL 12886493, at *4 (alteration in original) (quoting *Jules v. Jordan Video, Inc. v. 144942 Can., Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010)).  However, unlike in *Malovani*, Plaintiff has not pled that it is a "one-man shop."  Plaintiff alleges only that Sun is its "founder," (*see* SAC ¶ 13), and that Sun assigned the CONG BAN LV Mark to Plaintiff with an effective date of July 17, 2018, (*see id.* ¶ 14).  While it appears that there are no chain of title issues like those that plagued the plaintiff in *Gaia Technologies* and there is currently "no dispute between these two entities" as to ownership of the mark, *Malovani*, 2012 WL 12886493, at *4, the Court has no information as to who controls Plaintiff, *see id.* (noting that there is no dispute between the two entities "because the same individual controls both" entities), or about the role Sun currently has in Plaintiff — a company that provides products globally.  This makes the instant case distinguishable from the "one-man shop" at issue in *Malovani*.[7]  (*See* Defs.' Reply in Supp. Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 91 (noting that Plaintiff does not plead that it "was Sun's one-man shop or [that] Plaintiff and Sun had identical business interests").)

_____

[7]  The other cases cited by Plaintiff are similarly unpersuasive.  Plaintiff cites to *Happy Feet USA, Inc. v. Burch*, No. 09-CV-1903, 2010 WL 11626536, at *4 (M.D. Fla. Apr. 2, 2010), to support the argument that a *nunc pro tunc* assignment can confer standing.  (Pl.'s Opp'n 9 n.2.)  However, in that case, the assignment was made before the litigation was commenced.  *See Happy Feet USA*, 2010 WL 11626536, at *4.  In addition, *Nutritech Sols. Ltd. v. Matrix Nutrition, LLC* is similarly inapposite because it addresses standing under the more liberal section 1125(a) of the Lanham Act, which permits "'any person who believes that he or she is likely to be damaged' by the proscribed conduct to bring a civil action," not just the registrant of the mark.  No. 06-CV-461, 2007 WL 1424337, at *3 (D. Ariz. May 11, 2007).

Accordingly, the Court finds that Plaintiff does not have standing to sue under section 1114(1) of the Lanham Act as *nunc pro tunc* assignee.

## 2.    Standing as exclusive licensee

Defendants argue that Plaintiff lacks standing to sue as an exclusive licensee.  (Defs.' Mem. 6–7.)  Defendants assert that a plaintiff "must show that its 'license' amounts . . . to an assignment to establish entitlement to sue" under section 1114(1).  (*Id.* at 6 (quoting *Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 78).)  In support, Defendants assert that courts in this Circuit "look to the terms of the license agreement to determine whether the licensee held a property interest in the mark, becoming effectively an assignee for standing purposes."  (*Id.* (quoting *L'Oreal USA, Inc.*, 2013 WL 4400532, at *9)), and argue that Plaintiff does not have standing as an exclusive licensee because Plaintiff "did not have any duly executed instrument in writing to suggest that an assignment of trademark rights took place before the litigation" attached to any of the complaints, (*id.* at 8.)

Plaintiff argues that it has standing to sue under section 1114(1) as an exclusive licensee.  (Pl.'s Opp'n 11.)  In support, Plaintiff asserts that unlike in *Federal Treasury Sojuzplodoimport* where "not a single document contained any language indicating transfer of rights in the asserted mark," Plaintiff "repeatedly pleaded that it was an exclusive licensee at the time of filing its Complaint and further pleaded that it is the assignee."  (*Id.* (emphases omitted) (citing Compl. ¶ 11; Am. Compl. ¶¶ 8, 18; SAC ¶ 14).)

For a licensee to have standing under section 1114(1) of the Lanham Act, a plaintiff-licensee "must show that its license amounts, in fact, to an assignment to establish entitlement to sue under [15 U.S.C. § 1114(1)]."  *Sream Inc.*, 2017 WL 2633510, at *3 (alteration in original) (quoting *Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 78).  "Courts in this Circuit look to

23

the terms of the license agreement to determine whether the licensee held a property interest in the mark, becoming effectively an assignee for standing purposes." *Id.* (quoting *L'Oreal USA, Inc.*, 2013 WL 4400532, at *9).  Although the Second Circuit has not precisely formulated when a licensee effectively is an assignee, *see Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 76 ("[W]e need not precisely delineate the bundle of rights that a trademark assignment must extend to a purported assignee to support the latter's standing to bring a [s]ection 32(1) suit."), district courts in this Circuit consider "(1) whether the license agreement 'imposes geographical limitations on the use of the trademark;' (2) whether the agreement 'requires the licensee to maintain the trademark's quality and reserves [to the licensor] the right to monitor the licensee's product quality;' (3) whether 'the rights and duties in the license agreement are inconsistent with assignment;' and (4) whether the 'license agreement states that the licensor retains ownership of the trademark.'" *L'Oreal USA, Inc.*, 2013 WL 4400532, at *9 (quoting *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, No. 04-CV-8510, 2011 WL 4005321, at *7 (S.D.N.Y. 2011), *aff'd* 726 F.3d 62 (2d Cir. 2013)).

Plaintiff's license does not amount to an assignment.  While the License Agreement grants Plaintiff "an exclusive, royalty-free right to use and enforce" the CONG BAN LV Mark, all other factors weigh against a finding that the License Agreement is an assignment.  (License Agreement 1.)  Sun retained ownership rights of the CONG BAN LV Mark, (*see id.* at 3 (stating that "[a]ny rights asserted by Licensee in such mark shall vest in Sun, Teh-San, and any goodwill from use of such mark by Licensee shall inure to the benefit of Sun, Teh-San")), and the ability to "inspect . . . [Plaintiff's] goods, services[,] and promotional activities employing the logo to ensure that such use is of proper quality" as well as the power to "terminate the license should it determine that the use is inconsistent with this Agreement," (*id.* at 2).  In addition, while

Plaintiff's exclusive use was not limited, Plaintiff was only granted the ability to "carry out legal rights protection of the logo in the United States." (*Id.* at 1.) Because the License Agreement imposed several restrictions on Plaintiff's use of the CONG BAN LV Mark, the License Agreement is "more akin to a licensing agreement than an assignment." *L'Oreal USA, Inc.*, 2013 WL 4400532, at \*12; *see also Fed. Treasury Enters. Sojuzpolodoimport*, 726 F.3d at 77 ("[Plaintiff] has not cited any persuasive authority within or outside our Circuit holding that a valid assignment of a trademark right can occur when the putative assignor retains the right to rescind the trademark, to grant a license for its use to others, or to exclude others from using the mark. We decline to create such a rule here."); *Brooklyn Bottling of Milton, N.Y., Inc. v. Ecuabeverage Corp.*, No. 07-CV-8483, 2008 WL 577288, at \*2 (S.D.N.Y. Mar. 3, 2008) (finding no assignment, despite language in an agreement authorizing licensee to bring enforcement actions, when the agreement restricted the license to a geographical location and expressly stated that licensor remained the owner of the trademarks); *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, No. 07-CV-349, 2007 WL 704171, at \*3 (S.D.N.Y. Mar. 7, 2007) (finding no assignment when a distribution agreement granted plaintiff the exclusive use of and enforcement rights to various trademarks but explicitly permitted licensor to terminate the license); *cf. Telebrands Corp. v. Del Lab'ys Inc.*, 719 F. Supp. 2d 283, 293 (S.D.N.Y. 2010) (finding an assignment when the license agreement granted the licensee "broad rights to sell [the product] throughout the United States, royalty free, for a potentially unlimited period," and did not set forth any restrictions on the licensee's ability to enforce the trademarks or other intellectual property of the product).

Accordingly, Plaintiff does not have standing to sue under section 1114(1) of the Lanham Act as an exclusive licensee.

ii.  **Trademark dilution pursuant to section 360-*l* of the NYGBL**

Defendants argue that Plaintiff lacks standing to bring its state law dilution claim because section 360-*l* of the NYGBL is modeled on the federal dilution statute, section 1125(c) of the Lanham Act, which only allows "'the owner of a famous mark[]' to 'be entitled to an injunction against another person who . . . commences use of a mark or trade name in commerce that is likely to cause dilution.'"  (Defs.' Mem. 20 (quoting *Prince of Peace Enters., Inc.*, 760 F. Supp. 2d at 392–93).)  Defendants assert that because section 360-*l* "requires the person who files the lawsuit [to] be the owner of the mark," and because the Assignment does not retroactively confer standing on Plaintiff, Plaintiff does not have standing to bring this claim.  (*Id.*)

Plaintiff argues that it does have standing to bring its state law dilution claim because the Assignment transferred "all ownership rights" in the CONG BAN LV Mark.  (Pl.'s Opp'n 23.)  Plaintiff also argues that Defendants "mistake the standard for a NYGBL § 360-*l* claim as the higher standard for federal dilution" which requires a mark to be 'famous' for protection to apply.  (*Id.* at 22.)

"[T]o establish a trademark dilution claim under [NYGBL § 360–*l*], [a plaintiff] must show ownership of a distinctive mark and a likelihood of dilution."  *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485–86 (2d Cir. 2005) (citing *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 966 (2d Cir. 1996)).  Standing for state dilution claims under section 360-*l* "requires that [plaintiff] be the owner of the mark in question."  *Prince of Peace Enters., Inc.*, 760 F. Supp. 2d at 392–93.

Because Plaintiff has failed to establish that it is the owner of the CONG BAN LV Mark and the Court has already concluded that the Assignment does not confer ownership rights *nunc pro tunc* for the purpose of standing, the Court finds that Plaintiff lacks standing to bring its

26

NYGBL dilution claim.  *See MacKay v. Crews*, No. 09-CV-2218, 2009 WL 5062119, at *5 (E.D.N.Y. Dec. 16, 2009) ("[S]tanding under [NYGBL] § 360-*l* requires that the plaintiff be the registrant or assignee of a mark." (citing *Krasnyi Oktyabr, Inc. v. Trilini Imps.*, 578 F. Supp. 2d 455, 471 (E.D.N.Y. 2008))); *Krasnyi Oktyabr, Inc.*, 578 F. Supp. 2d at 471 (finding that because the plaintiff did not have standing under section 1114(1) of the Lanham Act, plaintiff also did not have standing under section 360-*l* and stating that "[t]he standing inquiry for [section] 360–*l* is thus similar to that for Section 32(1) of the Lanham Act"); *Prince of Peace Enters., Inc.*, 2007 WL 704171, at *3 ("Only the federal 'registrant' or legal assignee has standing to sue for trademark infringement under Section 32(1) of the Lanham Act, for federal trademark dilution under Section 43(c) of the Lanham Act, or for dilution under Section 360-*l* of the [NYGBL].").[8]

### c.   Trade dress infringement under the Lanham Act and the New York common law, false designation of origin under the Lanham Act, and trademark infringement and unfair competition under the New York common law

To prevail on claims for trade dress infringement and false designation of origin under the Lanham Act, and trademark infringement, trade dress infringement, and unfair competition under the New York common law, a plaintiff "must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020)

---

[8]  Defendants argue that Plaintiff lacks standing to pursue its state law dilution claim because Plaintiff "was not the owner of the mark."  (*See* Defs.' Mem. 20–21.)  Defendants do not specify whether "mark" refers to just the CONG BAN LV Mark or also includes the CONG BAN LV Trade Dress.  Defendants argue that Plaintiff lacks standing under section 360-*l* because Plaintiff is not the registrant of the CONG BAN LV Mark pursuant to section 1114(1) of the Lanham Act and therefore could not be the owner under section 360-*l*.  However, Plaintiff does not purport to have registered the CONG BAN LV Trade Dress.  (*See* SAC.)  The Court therefore does not understand Defendants' concerns about whether Plaintiff has standing to sue under section 360-*l* to apply to the unregistered CONG BAN LV Trade Dress and thus construes Defendants' argument challenging the CONG BAN LV under NYGBL § 360-*l* to only pertain to the CONG BAN LV Mark.

(alteration in original) (quoting *Sports Auth., Inc.*, 89 F.3d at 960); *Reply All Corp. v. Gimlet Media, LLC*, --- F. App'x ---, ---, 2021 WL 650488, at *6 (2d Cir. Feb. 19, 2021) ("New York common law claims for trademark infringement are analyzed under the same framework as . . . Lanham Act claims . . . ."); *Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 43 (2d Cir. 2020) (noting that trademark infringement claims under the Lanham Act and the New York common law have the same prima facie requirements); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (noting that trademark infringement claims under Lanham Act §§ 1114(1) and 1125(a) are analyzed under the same test); *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020) (stating that trademark infringement claims and false designation claims under the Lanham Act as well as unfair competition claims under the New York common law have the same prima facie requirements); *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-CV-12069, 2020 WL 774237, at *1 (S.D.N.Y. Feb. 18, 2020) ("'[T]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law "mirror the Lanham Act claims,"' except that unfair competition 'requires an additional showing of bad faith.'" (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005))); *Phx. Ent. Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) ("The infringement analysis under the trademark infringement and unfair competition provisions of the Lanham Act is the same." (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009) (per curiam))).

Because trade dress infringement and false designation of origin under the Lanham Act, and trademark infringement and unfair competition under the New York common law all require that Plaintiff prove it has a mark entitled to protection, *see Tiffany & Co.*, 971 F.3d at 84;

28

*OffWhite Prods., LLC*, 480 F. Supp. 3d at 563 (noting that for each claim, the complaint "must allege sufficient facts to establish, first, that the plaintiff's mark is entitled to protection"), the Court assesses whether Plaintiff's claimed trademark in the CONG BAN LV Mark and claimed trade dress in the CONG BAN LV Trade Dress are entitled to protection.[9]  The Court also assesses whether Plaintiff alleged sufficient facts to support an inference of bad faith as required to support a claim of unfair competition under the New York common law.  *Salvatore Ferragamo S.p.A.*, 2020 WL 774237, at *1.

### i.   CONG BAN LV Mark

The Court first addresses Plaintiff's claims pertaining to the CONG BAN LV Mark for false designation of origin under section 1125(a) of the Lanham Act and unfair competition and trademark infringement under the New York common law.  The Court examines whether Plaintiff has alleged that is has a valid mark and next assesses whether Plaintiff has plausibly alleged bad faith as required under the New York common law for unfair competition claims.

### 1.   Validity of the mark

Defendants argue that the CONG BAN LV Mark is not entitled to protection because the CONG BAN LV Mark is "merely generic."  (Defs.' Mem. 18.)  In support, Defendants state that the most dominant feature of the CONG BAN LV Mark is the three Chinese characters "葱伴侣" that translate to "scallion" ("葱") and "companion or mate" ("伴侣") in English.  (*Id.*)  Defendants assert that "scallion" is a "generic term for a type of small onion with a long green

---

[9]  Because a product's trade dress "is essentially a product's total image and overall appearance as defined by its overall composition and design, including size, shape, color, texture, and graphics," *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 454 F. Supp. 3d 229, 249 (S.D.N.Y. 2020) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995)), the Court assesses Plaintiff's claims with respect to the CONG BAN LV Mark and CONG BAN LV Trade Dress separately.

stem" and "companion" or "mate" are generic or descriptive terms "for one of a pair of things

that go together or can be used together." (*Id.* at 18–19.)  Defendants argue that Plaintiff's mark

"would have been disclaimed at the time of application" had the USPTO examiner "looked into

the English meaning of these characters more thoroughly." (*Id.* at 19.)

      In response, Plaintiff argues that the CONG BAN LV Mark is valid and enforceable

because the CONG BAN LV Mark is (1) incontestable by operation of law and Defendants

cannot challenge the validity of an incontestable mark by alleging that it is merely descriptive

and (2) entitled to a rebuttable presumption that the mark is more than merely descriptive

because it is registered.  (Pl.'s Opp'n 20–21.)

      "A certificate of registration . . . [is] prima facie evidence of the validity of [a] registered

mark," 15 U.S.C. § 1057(b), and creates a presumption that the mark is entitled to protection.

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)

("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost

protection.").  "[T]he general principles qualifying a mark for registration . . . are for the most

part applicable in determining whether an unregistered mark is entitled to protection under

§ 43(a) [of the Lanham Act]."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992);

*Lyons P'ship, L.P. v. D & L Amusement & Ent., Inc.*, 702 F. Supp. 2d 104, 113 (E.D.N.Y. 2010).

"To be valid and protectible, a mark must be capable of distinguishing the products it marks

from those of others."  *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 344 (2d

Cir. 1999) (citing *Two Pesos, Inc.*, 505 U.S. at 768).  "An identifying mark is distinctive and

capable of being protected if it *either* (1) is inherently distinctive or (2) has acquired

distinctiveness through secondary meaning."  *Two Pesos, Inc.*, 505 U.S. at 769.  "Inherent

distinctiveness is assessed on a continuum from least to most distinctive, with the aid of

categories usually called (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful, with marks in the last category considered the strongest." *Car-Freshner Corp. v. Am. Covers, Inc.*, 980 F.3d 314, 329 (2d Cir. 2020); *see also Two Pesos, Inc.*, 505 U.S. at 768 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)) (same). The Second Circuit has explained that:

> A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species. A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.

*Lane Cap. Mgmt.*, 192 F.3d at 344. "Generic marks are not protectible." *Id.* Descriptive marks "are not inherently distinctive" and thus are only protected upon a showing that the mark has acquired "secondary meaning," *id.*, which is "determined by analyzing six factors: advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use," *Car-Freshner Corp.*, 980 F.3d at 329 (citing *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987)). Suggestive, arbitrary, and fanciful marks are inherently distinctive and thus automatically protected because "[t]heir intrinsic nature serves to identify a particular source of a product." *Lane Cap. Mgmt.*, 192 F.3d at 344.

Sun's registration of the CONG BAN LV Mark is prima facie evidence of the validity of the mark and creates a presumption that the mark is neither generic nor descriptive, as

31

Defendants argue.[10]  *See Abercrombie & Fitch Co.*, 537 F.2d at 11; *Lois Sportswear, U.S.A., Inc.*, 799 F.2d at 871.  However, even without the benefit of this presumption, Plaintiff's CONG BAN LV Mark appears to be suggestive and thus inherently distinctive and entitled to protection. Defendants' argument assumes that the Chinese characters translate to words that are solely descriptive of the product and that an American trademark examiner may not have appreciated the translation of the CONG BAN LV Mark.[11]  The Court is not persuaded by this argument. Plaintiff's CONG BAN LV Mark is used in connection with Plaintiff's soybean paste and bean curd products, (SAC ¶ 11), therefore, the combination of the translated words "scallion" and "companion" or "mate" do not necessarily "'conjure[] up the image' of the precise good with which it is associated" because the ingredients contained therein are not the same as the words used in the mark itself.[12]  *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 163 (2d Cir.

---

[10]  Because the Court finds that Plaintiff is entitled to a presumption that the mark is neither generic nor descriptive because the CONG BAN LV Mark has been registered, the Court need not address whether Plaintiff is entitled to this same presumption under the doctrine of incontestability for purposes of this Memorandum and Order.

[11]  The Court notes that Defendants' argument that the USPTO examiner did not fully appreciate the translation of the CONG BAN LV Mark is unpersuasive because it is a conclusory allegation that the USPTO examiner did not examine the mark in English.  At the time Sun applied to register the CONG BAN LV Mark, an applicant for registration of a mark including non-English words was required to include an English translation of those words.  *See* 37 C.F.R. § 2.32(a)(9)–(10) (2009) (stating that registrants must submit an English translation of any non-English wording and "[i]f the mark includes non-Latin characters, a transliteration of those characters, and either a translation of the transliterated term in English, or a statement that the transliterated term has no meaning in English").

[12]  The Court examines the meaning of the CONG BAN LV Mark translation in English to assess the validity of the mark under the doctrine of foreign equivalents.  *See Otokoyama Co. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 271 (2d Cir. 1999) ("Courts and the USPTO apply this policy, known as the doctrine of 'foreign equivalents' to make generic foreign words ineligible for private ownership as trademarks." (citation omitted)); *Lopez v. Nike, Inc.*, No. 20-CV-905, 2021 WL 128574, at *11 n.10 (S.D.N.Y. Jan. 14, 2021) ("[T]he 'doctrine of foreign equivalents,' a policy applied by courts and the USPTO, . . . makes 'generic foreign words ineligible for

2016) (stating that a descriptive mark communicates "an immediate idea of the ingredients, qualities, or characteristics of the goods" (quoting *Bernard v. Com. Drug Co.*, 964 F.2d 1338, 1340 (2d Cir. 1992))); *see also Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 442 (S.D.N.Y. 2017) ("The fact that HOMME is French for 'man' may or may not be known to the general consumer encountering the cologne, but either way it does not convey 'an immediate idea of the ingredients, qualities or characteristics' of the fragrance at issue." (quoting *Bernard*, 964 F.2d at 1341)). In addition, while "scallion" and "companion" or "mate" may convey the notion that the product contained therein is consumed with scallions, it does not necessarily call to mind that the accompaniment for the scallions is the soybean paste or bean curd product offered by Plaintiff. *See, e.g.*, *Soil Sols., Inc. v. Soil Sol. Indus. Inc.*, No. 09-CV-2470, 2009 WL 3753912 at \*4 (E.D.N.Y. Nov. 6, 2009) (determining that "Soil Solutions" is a suggestive mark even though the name describes soil because it does not conjure up the company's soil removal and drilling services).

Moreover, the CONG BAN LV Mark is not just a word mark; the Chinese characters are superimposed on a green rectangular background design with a five-petal flower at the top intersecting with the background. (SAC ¶ 12); *see Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 216 (2d Cir. 2003) ("There are many examples of legally protected marks that combine generic words with distinctive lettering, coloring, or other design elements."); *J.T. Colby & Co.*

---

private ownership as trademarks.'" (quoting *Lopez v. Adidas Am., Inc.*, No. 19-CV-7631, 2020 WL 2539116, at \*13 (S.D.N.Y. May 19, 2020))); *Balady, Inc. v. Elhindi*, No. 14-CV-855, 2014 WL 7342867, at \*5 (E.D.N.Y. Dec. 23, 2014) ("When a mark is a non-English word, the doctrine of foreign equivalents applies, which states, 'a trademark which is not in English is first translated into English, and is then classified.'" (quoting *French Transit, Ltd. v. Modern Coupon Sys., Inc.*, 818 F. Supp. 635, 636 (S.D.N.Y.1993))); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:36 (5th ed. 2019) ("The test is whether, to those American buyers familiar with the modern foreign language, the word would denote its English equivalent.").

*v. Apple Inc.*, No. 11-CV-4060, 2013 WL 1903883, at *7 (S.D.N.Y. May 8, 2013) ("[A] composite mark must ordinarily be viewed as a whole to determine the mark's distinctiveness."), *aff'd*, 586 F. App'x 8 (2d Cir. 2014).  Plaintiff's mark is suggestive because nothing about the images or geometric shapes conveys information about the ingredients, qualities, or characteristics of the soybean paste or bean curd products.  *See J.T. Colby & Co.*, 2013 WL 1903883, at *7 (finding that a lightbulb image combined with the word "ibooks" is suggestive because "[t]he image does not immediately convey information about the ingredients, qualities, or characteristics of the plaintiffs' books, although it may suggest certain attributes").

Accordingly, Plaintiff's CONG BAN LV Mark is suggestive and thus inherently distinctive and entitled to protection.

### 2.  Bad faith

Defendants argue that Plaintiff's unfair competition claim under New York common law fails because Plaintiff makes only a conclusory assertion that Defendants acted in bad faith and "failed to support the allegations with particular facts."  (Defs.' Mem. 19.)

Plaintiff argues that the SAC contains "textbook examples" of Defendants' acts in bad faith, such as that Defendants began infringing "sometime during May Flower's relationship with Shandong Shinho," that May Flower "concealed its involvement" in the alleged infringement after Plaintiff asked to "investigate" the allegedly infringing products, and that May Flower filed "infringing trademark applications in the names of GB Green[] and Xiaobo Yao to disguise its infringing and counterfeit enterprise."  (Pl.'s Opp'n 21–22 (quoting SAC ¶¶ 26–27).)

"In analyzing whether a defendant has acted in bad faith, the question is whether the defendant attempted 'to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products.'"  *Tiffany & Co.*,

971 F.3d at 88 (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005)).

"Even where there is no direct evidence of intent, 'if there is additional evidence that supports

the inference that the defendant sought to confuse consumers as to the source of the

product, . . . the inference of bad faith may fairly be drawn." *Kelly-Brown v. Winfrey*, 717 F.3d

295, 312 (2d Cir. 2013) (quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos,

Inc.*, 228 F.3d 56, 66 (2d Cir. 2000)).

　　Plaintiff has plausibly alleged bad faith because Plaintiff pled facts that indicate

Defendants were aware of the existence of Plaintiff's mark and nevertheless proceeded to use it.

As Plaintiff indicates, the SAC alleges that Defendants allegedly infringing use arose during May

Flower's relationship with Plaintiff and that May Flower "concealed its involvement by

representing that another party was producing and selling the infringing CONG BAN JIANG

products." (SAC ¶ 26.) Plaintiff further alleges that May Flower "deceived" Plaintiff into

believing it would remedy the alleged infringement, that May Flower "tried to dissuade" Plaintiff

from taking "further actions" and that infringing trademark applications were filed in other

names as a guise for Defendants' actions. (*Id.* ¶ 26–27.) These allegations are sufficient to

plausibly allege that Defendants acted in bad faith. *See Really Good Stuff, LLC v. BAP Inv'rs,

L.C.*, No. 19-CV-2218, 2019 WL 5460784, at *10 (S.D.N.Y. Oct. 17, 2019) (finding that

counterclaim plaintiff sufficiently pled bad faith under New York common law when the

plaintiff alleged that the counterclaim defendant "acted with full knowledge of [plaintiff's] use

of, and statutory and common law rights to, [defendant's mark] and without regard to the

likelihood of confusion of the public created by [defendant's] activities"), *aff'd in relevant part

and vacated on other grounds*, 813 F. App'x 39 (2d Cir. 2020); *Innovation Ventures, LLC v.

Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 158 (E.D.N.Y. 2016) ("[T]he Second Circuit

35

has indicated that a bad faith presumption only attaches to an unfair competition claim if a defendant was at least aware of its use of counterfeits." (citing *Lorillard Tobacco Co.*, 378 F. Supp. 2d at 456–57)); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946, 2015 WL 1299259, at *11 (E.D.N.Y. Mar. 23, 2015) (finding bad faith when "[p]laintiff's representatives spoke to [d]efendant's owner twice prior to this litigation, warning him that [d]efendant was infringing on [p]laintiffs' mark and suggesting that [d]efendant change the name of its salon to avoid further infringement"); *see also Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 507–08 (S.D.N.Y. 2018) (finding, in the context of an unfair competition claim premised on trade secret misappropriation, that allegations that defendant obtained plaintiff's trade secrets "under the guise" of partnering with them when defendant had no intention of following through on the partnership, then cut plaintiff out of a subsequent deal using those trade secrets, sufficiently alleged unfair competition to survive dismissal).

Accordingly, because Plaintiff has plausibly alleged that its CONG BAN LV Mark is valid and entitled to protection and that Defendants' conduct was in bad faith, the Court finds that Plaintiff has plausibly alleged claims for trademark infringement and unfair competition under the New York common law as well as false designation of origin under the Lanham Act.[13]

### ii. CONG BAN LV Trade Dress

The Court next addresses Plaintiff's claims pertaining to the CONG BAN LV Trade Dress for trade dress infringement under section 1125(a) of the Lanham Act, and unfair competition and trademark infringement under the New York common law.

---

[13] Defendants argue that Plaintiff has failed to state a claim with respect to the CONG BAN LV Mark because the mark is not valid and because Plaintiff fails to plead bad faith. (Defs.' Mem. 17–20.) Neither party briefs the issue of likelihood of confusion as it pertains to the CONG BAN LV Mark. (*See* Defs.' Mem; Pl's Opp'n; Defs.' Reply.) Accordingly, the Court does not address whether Plaintiff has plausibly alleged likelihood of confusion.

### 1.  Type of trade dress

As a threshold matter, the Court addresses whether the CONG BAN LV Trade Dress should be classified as product packaging trade dress or product design trade dress.[14]

Defendants argue that the CONG BAN LV Trade Dress "goes beyond product packaging to encompass the product design."  (Defs.' Mem. 13.)

Plaintiff asserts that the CONG BAN LV Trade Dress should be assessed under the "lower pleading standard to claim valid trade dress product packaging" instead of the "higher standard for pleading valid trade dress product design."  (Pl.'s Opp'n 17.)  In opposing Defendants' motion, Plaintiff contends that Defendants' "only argument in support of dismissing this claim is to *re-characterize* Plaintiff's claimed trade dress from protection of product packaging to product design."  (*Id.*)

Section 1125(a) provides a cause of action against any person "who, on or in connection with any goods . . . or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person . . . ."  15 U.S.C. § 1125(a); *see also Eliya, Inc. v. Kohl's Corp.*, No. 15-CV-2123, 2016 WL 929266, at *3 (E.D.N.Y. Feb. 22, 2016) (quoting *Classic Touch Décor v. Michael*

---

[14]  The parties dispute whether the CONG BAN LV Trade Dress constitutes product packaging or product design because how a trade dress is characterized implicates the showing a plaintiff needs to make to prove it has a valid trade dress entitled to protection under the Lanham Act.  *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 342 (E.D.N.Y. 2014) ("In a trade dress claim premised on a particular product design (as opposed to product packaging or labeling), . . . plaintiffs 'must make the additional showing that its design has acquired secondary meaning in the marketplace by which it is identified with its producer or source.'" (quoting *Blumenthal Distrib., Inc. v. Exec. Chair, Inc.*, No. CV-10-1280, 2010 WL 5980151, at *1 (E.D.N.Y. Nov. 9, 2010), *report and recommendation adopted*, No. 10-CV-1280, 2011 WL 839546 (E.D.N.Y. Mar. 3, 2011))).

*Aram, Inc,*, No. 15-CV-453, 2015 WL 6442394, at *3 (E.D.N.Y. Oct. 23, 2013)), *report and recommendation adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 339 (E.D.N.Y. 2014). "A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). "A product's trade dress is protected under the Lanham Act if it is not functional and if it is either inherently distinctive or has acquired secondary meaning in the marketplace." *See id.* (citing *Two Pesos, Inc.*, 505 U.S. at 769).

"Trade dress claims were originally limited to 'packaging or "dressing" of a product,' but has been expanded to encompass 'the design of a product.'" *Eliya, Inc.*, 2016 WL 929266, at *3 (quoting *Classic Touch Décor, Inc.*, 2015 WL 6442394, at *3); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (noting that trade dress is "a category that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded by many Courts of Appeals to encompass the design of a product"). "Product packaging refers 'to the manner in which a product was "dressed up" to go to market with a label, package, display card, and similar packaging elements.'" *Eliya, Inc.*, 2016 WL 929266, at *3 (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1005 (2d Cir.1997)). "Product design is 'the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers.'" *Id.* (quoting *Knitwaves, Inc.*, 71 F.3d at 1005).

Plaintiff's characterization of the CONG BAN LV Trade Dress appears to constitute product packaging rather than product design. Plaintiff characterizes the CONG BAN LV Trade Dress as consisting of:

> (a) the green color of the tub container; (b) the yellow color of the container cap; (c) the yellow color stripe across the bottom portion of the front panel of the product label; (d) the predominantly green landscape image, which appears above the yellow color stripe on the front panel of the product label; and (e) the square shaped tub container . . . .

(SAC ¶ 15.)  The United States Supreme Court's decision in *Wal-Mart Stores, Inc.*, is instructive in discerning between product-design and product-packaging trade dress, particularly as it pertains to trade dress in the food and beverage context.  *Wal-Mart Stores, Inc.*, 529 U.S. at 215. As an example of the distinction between product design and product packaging, the Supreme Court stated that:

> a classic glass Coca–Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former.

*Id.*  The Supreme Court's Coca-Cola bottle example suggests that when the bottle or container for a food or beverage item is not the product itself sought after by consumers but rather contains the product inside, the bottle or container constitutes product packaging trade dress.  If, on the other hand, the bottle or container is part of the sought-after product itself, such as with a collector seeking to acquire the bottle in addition to the soda contained therein, the bottle or container may constitute product design trade dress.  *See Eliya, Inc. v. Kohl's Dep't Stores*, No. 06-CV-195, 2006 WL 2645196, at *2 (S.D.N.Y. Sept. 13, 2006) ("[P]roduct design trade dress refers to the design of the product itself, while product packaging trade dress refers to a product's packaging as it appears in the marketplace").

Plaintiff's CONG BAN LV Trade Dress signifies the soybean product it contains; the container itself is not the product.  *See Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, --- F. Supp. 3d. ---, ---, 2020 WL 1673687, at *6–7 (S.D.N.Y. Apr. 6, 2020) (distinguishing from the

Cola-Cola bottle example and finding that the trade dress infringement claim concerns product design because plaintiff's "customers are interested in the . . . vehicle itself, which makes it unequivocally the product"); *Coty Inc.*, 277 F. Supp. 3d at 444 ("[Plaintiff's] trade dresses are plainly product packaging in that they refer 'to the manner in which [the fragrances are] dressed up to go to market with a label, package, display card, and similar packaging elements.'" (second alteration in original) (quoting *Knitwaves, Inc.*, 71 F.3d at 1005)).  Accordingly, the Court applies the test for product-packaging trade dress.[15]

## 2.   Validity of trade dress

To demonstrate that a plaintiff has a valid mark entitled to protection under section 1125(a) for product-packaging trade dress, a "plaintiff must first demonstrate that its trade dress is either inherently distinctive or that it has acquired distinctiveness through a secondary meaning."  *L'Oreal USA, Inc.*, 2013 WL 4400532, at *19 (quoting *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997)); *see also Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18-CV-7592, 2019 WL 2023766, at *5 (S.D.N.Y. May 8, 2019) ("To allege the existence of a trade dress as a threshold matter, the claimant must ordinarily allege facts from which the Court can plausibly infer that the claimed dress is (1) 'distinctive' in terms of identifying the source of the product and (2) 'not functional.'" (quoting *Nora Beverages, Inc.*, 269 F.3d at 118–19)); *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-CV-3685, 2015 WL 4162757, at *7 (E.D.N.Y. July 8, 2015) (stating that plaintiff must prove "that the

---

[15]   Although the Court characterizes the CONG BAN LV Trade Dress as product packaging as opposed to product design, the Court nevertheless addresses secondary meaning because Plaintiff does not plausibly allege that its trade dress is inherently distinctive.  *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212 (2000) (holding that unregistered product design, unlike product packaging, is not inherently distinctive).  Accordingly, under these circumstances, the Court's classification of the CONG BAN LV Trade Dress does not ultimately impact the outcome.

40

mark is distinctive as to the source of the good" (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001))).  "An 'inherently distinctive trade dress,' however, is only entitled to protection if 'it is also nonfunctional.'"  *L'Oreal USA, Inc.*, 2013 WL 4400532, at *19 (quoting *Fun-Damental Too, Ltd.*, 111 F.3d at 999); *see also Steve Madden, Ltd.*, 2019 WL 2023766, at *5 ("Product features that are 'functional', *i.e.*, 'essential to the use or purpose of the [product] or . . . affect[ing] the cost or quality of the [product],' are not protectable under the Lanham Act because granting trademark protection would have significant anti-competitive effects." (alterations in original) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001))); *FC Online Mktg., Inc.*, 2015 WL 4162757, at *6.

### 3.   Distinctiveness

"In the Second Circuit, a plaintiff must articulate the specific elements that comprise its alleged trade dress." *Bobcar Media, LLC*, --- F. Supp. 3d at ---, 2020 WL 1673687, at *5 (citing *Yurman Design, Inc.*, 262 F.3d at 118); *Yurman Design, Inc.* 262 F.3d at 116–17 (noting that although the Second Circuit "announced the articulation requirement in the context of whether a plaintiff has satisfied the test for 'inherent distinctiveness' . . . it applies with equal or greater force to any case in which a plaintiff seeks protection for a line of products").  "Further, a plaintiff must make clear 'how they are distinctive.'"  *Bobcar Media, LLC*, --- F. Supp. 3d at ---, 2020 WL 1673687, at *5 (quoting *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009)).  A plaintiff's inability to articulate its claimed trade dress "may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme, or idea."  *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997).

41

Courts must evaluate the distinctiveness of a trade dress "by looking at all its elements and considering the total impression the trade dress gives to the observer." *Fun-Damental Too, Ltd.*, 111 F.3d at 1001 (citing *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993)); *L'Oreal USA, Inc.*, 2013 WL 4400532, at *20 (quoting *Fun-Damental Too, Ltd*, 111 F.3d at 1001).  To show distinctiveness for product-packaging trade dress, a plaintiff may show either (1) inherent distinctiveness, which is "that the 'intrinsic nature' of the mark serves to identify a particular source," or (2) secondary meaning, which means that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself." *Yurman Design, Inc.*, 262 F.3d at 115 (alteration in original) (quoting *Wal-Mart Stores*, 529 U.S. at 210–11); *see also FC Online Mktg., Inc.*, 2015 WL 4162757, at *7.

As a threshold matter, the Court finds that Plaintiff's characterization of its trade dress is sufficiently precise.[16]  Plaintiff characterizes the CONG BAN LV Trade Dress as consisting of:

> (a) the green color of the tub container; (b) the yellow color of the container cap; (c) the yellow color stripe across the bottom portion of the front panel of the product label; (d) the predominantly green landscape image, which appears above the yellow color stripe on the front panel of the product label; and (e) the square shaped tub container . . . .

(SAC ¶ 15.)  Plaintiff's description of its trade dress is not "pitched at an improper level of generality," *Landscape Forms, Inc.*, 113 F.3d at 381, but rather is "quite detailed" because it describes the various colors included on the container, the imaging on the container, the shape of the container, and stripes running across the product.  *See Bobcar Media, LLC*, --- F. Supp. 3d at

---

[16]   The Court addresses Plaintiff's characterization of its trade dress because of Defendants' apparent argument that Plaintiff's pleading is not sufficiently specific.  (*See* Defs.' Mem. 13 (noting, in the context of Defendants' distinctiveness arguments, that the SAC "lacks the requisite specificity when it contains a 'laundry list of the elements that constitute [the type of product]'s design" (alteration in original) (quoting *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (2d Cir. 2001))).)

42

---, 2020 WL 1673687, at *6 (finding a trade dress description satisfactorily detailed when the front and back of the trade dress is described, the details of a vehicle on the panels are described, and the colors and shape of the trade dress is described); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 454 F. Supp. 3d 229, 249 (S.D.N.Y. 2020) (noting that reciting "in specific detail the geometric and aesthetic characteristics" of trade dress in a manner that is "sufficiently precise" satisfies the character and scope element); *cf. Eliya Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) ("[T]he photos of the shoes do not make up for the deficiency in the precise expression of the distinctive features of the trade dress."). Accordingly, Plaintiff has articulated the specific elements of the CONG BAN LV Trade Dress.

The Court next addresses whether Plaintiff has sufficiently pled either inherent distinctiveness or secondary meaning.

### A. Inherent distinctiveness

Defendants argue that the six features listed by Plaintiff as comprising the CONG BAN LV Trade Dress are not distinctive and "lack[] the requisite specificity when it contains a 'laundry list of the elements that constitute [the type of product]'s design rather than a description of which of plaintiff's trade dress design elements are distinctive and how they are distinctive." (Defs.' Mem. 13 (second alteration in original) (quoting *Nat'l Lightning Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009)).)

Plaintiff states that product packaging trade dress, unlike product design trade dress, "is almost always found inherently distinctive" because "the varieties of labels and packaging available to . . . manufacturers are virtually unlimited." (Pl.'s Opp'n 18 (quoting *Fun-Damental Too, Ltd.*, 111 F.3d at 993).) Because Plaintiff outlined the CONG BAN LV Trade Dress elements, Plaintiff asserts that its pleadings are sufficient. (*Id.*)

"Under the rubric of inherent distinctiveness, the focus of the inquiry is whether or not the trade dress of a product serves primarily as an indication of origin, such that consumers will readily rely on it to distinguish the product from those of competing manufacturers." *FC Online Mktg., Inc.*, 2015 WL 4162757, at *7 (quoting *Forschner Grp., Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 407–08 (2d Cir. 1997)); *see also L. & J.G. Stickley v. Canal Dover Furniture Co.*, 79 F.3d 258, 262 (2d Cir. 1996) ("An inherently distinctive trade dress is one that is 'likely to serve primarily as a designator of origin of the product,' taking into account 'the nature of the designation and the context in which it is used.'" (citation omitted) (first quoting *Knitwaves, Inc.*, 71 F.3d at 1008; and then quoting Restatement (Third) of Unfair Competition § 13(a) (Am. L. Inst. 1995))). "As an element of trade dress . . . color is never inherently distinctive, but is capable of identifying a product's source and may be a protected trademark only when it has attained secondary meaning and has come to be associated in the consuming public's mind with a single source of origin." *FC Online Mktg., Inc.*, 2015 WL 4162757, at *7 (quoting *Forschner Grp, Inc..*, 124 F.3d at 408); *see also Wal-Mart Stores, Inc.*, 529 U.S. at 212 ("[Product] design, like color, is not inherently distinctive.").

Plaintiff has not pled inherent distinctiveness. Plaintiff's container is a "square[-]shaped tub," which is a "common basic shape." *See Star Indus., Inc.*, 412 F.3d at 382 ("'Common basic shapes' or letters are, as a matter of law, not inherently distinctive." (quoting *Seabrook Foods, Inc. v. Bar-Well Foods, Inc.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977))). While the containers are adorned with particular designs and borders, such as the "yellow color stripe across the bottom portion of the front panel of the product label" and the "green landscape image" positioned "above the yellow color stripe," (SAC ¶ 15), Plaintiff makes no allegations about similar products offered in the market in which it competes. *See L'Oreal USA, Inc.*, 2013 WL 4400532,

at *20 (finding that the fragrance packaging at issue is inherently distinctive from other high-end, luxury fragrances because "[t]he fragrances are packaged in boxes of different sizes and colors, . . . distinct designs and borders, and . . . different fonts and sizes"); *see also Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1069–70 (2d Cir. 1995) ("[W]here it is the custom in a particular industry to package products in a similar manner, a trade dress done in that style is likely to be generic."). Accordingly, the Court finds that Plaintiff has not sufficiently pled inherent distinctiveness.

## B.  Secondary meaning

Defendants argue that Plaintiff has not shown secondary meaning because "an extensive and successful history of selling and advertising the product, without more, is not sufficient to demonstrate that the claimed trade dress has secondary meaning for purposes of a trade dress infringement claim." (Defs.' Mem. 16.) In support, Defendants cite *Carson Optical, Inc.*, in which a court in this District granted the defendants' motion to dismiss when the plaintiff did not plead "facts concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue which would support an inference that the trade dress of the [product] acquired secondary meaning." (*Id.* (quoting *Carson Optical, Inc.*, 11 F. Supp. 3d at 344).) Defendants also assert that Plaintiff does not allege any facts connecting the CONG BAN LV Trade Dress to Plaintiff as "the source of the trade dress, rather than simply connecting the trade dress to this particular genre of soybean paste products." (*Id.* at 17.)

Plaintiff argues that it has sufficiently pled secondary meaning because it alleged facts concerning advertising expenditures, "consumer studies linking product appearance to product source," "sales success," "attempts to plagiarize the trade dress," and "length and exclusivity of use." (Pl.'s Opp'n 19 (citing SAC ¶¶ 17–19, 25).) Plaintiff also asserts that it has "established

45

Defendants' '[i]ntentional copying,' which 'is persuasive evidence of secondary meaning.'" (*Id.* (alteration in original) (quoting *Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd.*, 808 F. Supp. 952, 958 (E.D.N.Y. 1992)) (citing SAC ¶¶ 19–20, 22, 24–26).)

To assess whether a trade dress has acquired secondary meaning, courts in the Second Circuit consider the following factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012) (quoting *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 143 n.4 (2d Cir. 1997)); *see also Bobcar Media, LLC*, --- F. Supp. 3d at ---, 2020 WL 1673687, at *7; *Graduation Sols., LLC v. Acadima, LLC*, No. 17-CV-1342, 2020 WL 1466204, at *19 (D. Conn. Mar. 26, 2020).

Plaintiff has plausibly pled secondary meaning for the CONG BAN LV Trade Dress because it has offered evidence as to the first, second, and sixth factors — advertising expenditures, consumer studies linking the mark to a source, and the length and exclusivity of the mark's use. As to the first factor — advertising expenditures, Plaintiff alleged that it features the CONG BAN LV Trade Dress "in advertising and in other materials" including on its website en.shinhoglobal.com/brandgroup and in catalogs, print advertisements, presentations, and other marketing materials. (SAC ¶ 17.) As to the second factor — consumer studies, Plaintiff pled that it "retained a survey expert who surveyed over 800 respondents who shop in Chinese grocery stores" which revealed that "80% of survey respondents were confused between [Plaintiff's] CONG BAN LV [Mark]" and May Flower's products. (*Id.* ¶ 25.) While the survey only referenced the CONG BAN LV Mark, the summary of the survey revealed that the survey spoke to consumers' impressions of the Plaintiff's "soybean paste product" as a whole. (*See*

Study Summ. ¶ 1.)  Moreover, the survey reflected that 11.7% of consumers thought that May Flower's product was "put out by a company that is affiliated, connected, or associated with the company that puts out [P]laintiff's Shandong Shinho product," which suggests that the product appearance was linked to the product's source.  (*Id.* ¶ 2.)  As to the third factor — unsolicited media coverage of the product, although Plaintiff does not provide specific allegations regarding its commercial success, (*see* SAC ¶ 18 (stating that Plaintiff's sales of its products "have been tremendous" and it is "recognized as an established and reputable business in the market of sauce and soybean paste products")), it does allege that its products encased in the CONG BAN LV Trade Dress appear in "over 800 supermarkets across the United States, including, but not limited to, in Chinese supermarkets and in mainstream supermarkets" as well as in "209,859 retail stores in China," (*id.*).

The fourth factor — sales success, does not weigh in Plaintiff's favor because Plaintiff's allegations of attempts to plagiarize the trade dress only refer to the infringement at issue in this litigation.  (*See id.* ¶ 17.)  Such conclusory allegations are not entitled to the assumption of truth and are insufficient to state a plausible claim for trade dress infringement under the Lanham Act. *See, e.g.*, *Vedder Software Grp. Ltd. v. Ins. Servs. Off., Inc.*, 545 F. App'x 30, 33 (2d Cir. 2013) (finding that bare, conclusory assertions that recite the elements of a trademark infringement claim are "not entitled to be assumed to be true"); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11-CV-8921, 2013 WL 6670584, at * 7 (S.D.N.Y. Mar. 29, 2013) (same).

The sixth factor — length and exclusivity of the mark's use, weighs in Plaintiff's favor because Plaintiff alleged that it has used the CONG BAN LV Trade Dress Mark "continuously" and exclusively since its first use in U.S. commerce in 2008, which, to date, is over ten years of continuous use.  (SAC ¶¶ 11, 17; *see also* License Agreement (giving exclusive license to

Plaintiff)); *Graduation Sols., LLC*, 2020 WL 146620, at *20 ("Continuous exclusive usage of a trade dress over a five-year period may be evidence of acquired distinctiveness, though it need not be." (citation omitted) (first citing *Landscape Forms, Inc.*, 117 F. Supp. 2d at 366–67 (S.D.N.Y. 2000); and then citing *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1336 (Fed. Cir. 2015))).

Because most of the factors weigh in Plaintiff's favor, the Court finds that Plaintiff has plausibly alleged that the CONG BAN LV Trade Dress is inherently distinctive.  *See id.* (finding sufficient evidence to support distinctiveness when Plaintiff provided evidence as to four of the six factors); *cf. ID7D Co.*, 2012 WL 1247329, at *8 (finding no distinctiveness when plaintiff did not "assert[] facts relating to consumer surveys, sales success, marketing expenditures, media coverage or the length and exclusivity of its use of the dress").

### 4.  Functionality

Defendants argue that the CONG BAN LV Trade Dress is functional because there is a "statutory presumption that features are deemed functional until proven otherwise by the party seeking trade dress protection."  (Defs.' Mem. 14 (quoting *Carson Optical, Inc.*, 11 F. Supp. 3d at 340).)  In support, Defendants assert that Plaintiff "has not made any factual allegations that would overcome this presumption of functionality" because Plaintiff addressed "neither the functionality of the specific features that make up the claimed trade dress, nor the effect of the claimed trade dress protection on 'effective competition.'"  (*Id.* (quoting *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008)).)

Plaintiff argues that the CONG BAN LV Trade Dress is nonfunctional and that it "addressed the nonfunctional character and lack of effect on effective competition" in the SAC. (Pl.'s Opp'n 18 (citing SAC ¶¶ 15–16).)  In support, Plaintiff argues that the CONG BAN LV

Trade Dress is nonfunctional because the color scheme of the tub and square-shaped container "(1) are not essential to the function, nor do they affect the cost or quality, of the soybean paste product contained therein, and (2) enforcement of these elements does not put competitors at a significant non-reputation-related disadvantage." (*Id.*) Plaintiff also argues that the CONG BAN LV Trade Dress is nonfunctional because it does not undermine the ability of its competitors to compete in the relevant market as "no soybean paste producer has a competitive need to combine the claimed trade dress elements." (*Id.*)

It is a "well-established rule that trade dress protection may not be claimed for product features that are functional." *Sulzer Mixpac AG v. A&N Trading Co.*, --- F.3d ---, ---, 2021 WL 626696, at *5 (2d Cir. Feb. 18, 2021) (quoting *TrafFix Devices, Inc.*, 532 U.S. at 29). "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Id.* (quoting *Qualitex Co. v. Jacobson Prods. Co*., 514 U.S. 159, 165 (1995)).

The Second Circuit has instructed that courts in this circuit apply a three-part test to determine functionality. *Id.* at *5 (first citing *Christian Louboutin S.A.*, 696 F.3d at 219; and then citing *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 850 n.10 (1982)). First, courts must consider whether a product feature is functional under the two-prong test set forth in *Inwood. Id.* *6 ("*Louboutin* set out the three-step functionality test, where '[a]t the start, we address the two prongs of the *Inwood* test . . . . Next, if necessary, we turn to a third prong, which is the competition inquiry . . . ." (alteration in original) (quoting *Christian Louboutin S.A.*, 696 F.3d at 220)). "[A] product feature is considered to be 'functional' in a utilitarian sense if it is (1) 'essential to the use or purpose of the article,' or if it (2) 'affects the cost or quality of the

article.'" *Id.* at \*5 (quoting *Christian Louboutin S.A.*, 696 F.3d at 219); *Inwood Lab'ys, Inc.*, 456 U.S. at 850 n.10.  A product feature is "essential" if it is "dictated by the functions to be performed by the article." *Sulzer Mixpac AG*, --- F.3d at ---, 2021 WL 626696, at \*5 (quoting *Christian Louboutin S.A.*, 696 F.3d at 219).  "A feature affects cost or quality when it 'permits the article to be manufactured at a lower cost or constitutes an improvement in the operation of the goods.'" *Id.* (quoting *Christian Louboutin S.A.*, 696 F.3d at 219).  Next, a court may assess whether a feature is aesthetically functional — that is, whether "the aesthetic design of a product is *itself* the mark for which protection is sought." *Id.* at \*6 (quoting *Christian Louboutin S.A.*, 696 F.3d at 219–20).  In assessing aesthetic functionality, courts consider whether "giving the markholder the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *Id.* (quoting *Christian Louboutin S.A.*, 696 F.3d at 220).  The Second Circuit has emphasized that the "fact-intensive test where the feature must be 'shown not to have a significant effect on competition in order to receive trademark protection'" is only undertaken "[i]f and only if a design feature is not functional in the traditional sense" under *Inwood*. *Id.* (quoting *Christian Louboutin S.A.*, 696 F.3d at 220).  The burden to prove that an unregistered trade dress is not functional is on the plaintiff. *Yurman Design, Inc.*, 262 F.3d at 116 ("Prior to the [1999] congressional directive, this element was an affirmative defense in this circuit."); *Eliya, Inc.*, 2016 WL 929266, at \*7 ("[I]n order to successfully plead a trade dress claim, a plaintiff must specifically allege non-functionality.").

Plaintiff has failed to plausibly allege nonfunctionality of the CONG BAN LV Trade Dress.  The SAC contains only one sentence regarding functionality, stating that "[t[he CONG BAN LV Trade Dress is inherently distinctive and not functional."  (SAC ¶ 16.)  This conclusory statement is insufficient to allege nonfunctionality.  *See Eliya, Inc.*, 2016 WL 929266, at \*7

50

(finding that plaintiff did not state a claim for trade dress infringement when "the complaint provides only the most skeletal assertion that the claimed features are non-functional"); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. 11-CV-3677, 2013 WL 1209041, at *1 (E.D.N.Y. Mar. 25, 2013) ("[F]ailure to plead non-functionality with factual particularity establishes merely the possibility and not the plausibility of and is therefore fatal to [p]laintiff[s]' trade dress claim." (second and third alterations in original) (quoting *ID7D Co.*, 2012 WL 1247329, at *7)).

Because Plaintiff fails to meet the nonfunctionality prong, Plaintiff fails to demonstrate that it has a valid trade dress mark entitled to protection. *See Eliya, Inc.*, 2016 WL 929266, at *7 ("[T]he plaintiff's failure to sufficiently articulate the bases for its claim of nonfunctionality provides an alternative ground to dismiss the Lanham Act claim.").[17]

Accordingly, the Court dismisses Plaintiff's claims of trade dress infringement and unfair competition under both the Lanham Act and the New York common law.[18]

---

[17] Because Plaintiff fails to demonstrate that it has a valid trade dress mark and would nevertheless fail to state a claim regardless of likelihood of confusion, the Court does not address whether Plaintiff has alleged likelihood of confusion. Moreover, the parties failed to brief whether Plaintiff has alleged the likelihood of confusion. (*See* Defs.' Mem. 17 (stating that Defendants do not address likelihood of confusion because Plaintiff "did not properly plead the scope of the trade dress, non-functionality, and secondary meaning").)

[18] Plaintiff does not assert in the SAC that its false designation of origin claim is premised on Plaintiff's use of the CONG BAN LV Trade Dress. (*See* SAC ¶¶ 52–54.) However, Plaintiff references Defendants' allegedly infringing product packaging in the context of this claim. (*See id.*) For the reasons stated above, Plaintiff may assert its false designation of origin claim as it pertains to the CONG BAN LV Mark but not to the extent Plaintiff's false designation of origin claim is premised on the CONG BAN LV Trade Dress. *See Rosenshine v. A. Meshi Cosmetics Indus. Ltd.*, No. 18-CV-3572, 2020 WL 1914648, at *9 (E.D.N.Y. Mar. 30, 2020) (holding that plaintiff's claims for trade dress and false designation of origin fail when the plaintiff failed to satisfy the elements of a trade dress infringement claim).

**d. Trade dress dilution under section 360-*l* of the NYGBL**

Defendants do not specifically move to dismiss Plaintiff's dilution claim under NYGBL

§ 360–*l* as it pertains to the CONG BAN LV Trade Dress and only generally references

Plaintiff's "mark." (*See* Defs.' Mem. 20–21.)  However, Defendants state that Plaintiff fails to

state a claim of trademark dilution because Plaintiff did not plausibly allege either dilution by

blurring or dilution by tarnishment. (*Id.* at 21.)

Plaintiff argues that it has stated a claim for trade dress dilution because Plaintiff's

CONG BAN LV Trade Dress is a strong mark and is distinctive, and because Plaintiff has pled

dilution by blurring and tarnishment. (Pl.'s Opp'n 23–24.)  In support, Plaintiff argues that it has

pled dilution by blurring because the consumer survey shows that consumers view Plaintiff as

the source of Defendants' products. (*Id.* at 24.)  Plaintiff also contends that it has pled dilution

by tarnishment because "Defendants' products are of inferior quality and therefore tarnish the

distinctive quality" of the CONG BAN LV Trade Dress. (*Id.*)

Under New York law, "a plaintiff may obtain injunctive relief if it can show a

'[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or

trade name.'" *E.A. Sween Co. v. A & M Deli Express Inc.*, 787 F. App'x 780, 786 (2d Cir. 2019)

(alteration in original) (quoting *Starbucks Corp.*, 588 F.3d at 113–14); *see also* N.Y. Gen. Bus.

Law § 360-*l*.  To prevail, a plaintiff must show that (1) the trademark is "truly of *distinctive

quality*" or has "acquired secondary meaning" and (2) there is a likelihood of dilution. *Sly Mag.,

LLC v. Weider Publ'ns L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009) (quoting *Sally Gee, Inc. v.

Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir. 1983)); *A.V.E.L.A., Inc. v. Estate of Marilyn

Monroe, LLC*, 131 F. Supp. 3d 196, 211–12 ("To state a claim for dilution under New York law,

the plaintiff must plead the existence of '[i] a distinctive mark capable of being diluted, and [ii] a

52

likelihood of dilution.'" (alterations in original) (quoting *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 342 (S.D.N.Y. 2013))).  "In contrast to a dilution claim under the Lanham Act, a state law dilution claim does not require that a mark be famous to be protected[] but does require that the marks be 'substantially similar.'" *E.A. Sween Co.*, 787 F. App'x at 786 (quoting *Starbucks Corp.*, 588 F.3d at 114).  "A state law dilution claim can also be advanced under a blurring or tarnishment theory." *Id.* (citing *Starbucks Corp.*, 588 F.3d at 114).  "Blurring occurs 'where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'" *N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (quoting *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)).

Plaintiff fails to state a plausible claim of dilution under state law because Plaintiff has not shown that the CONG BAN LV Trade Dress is protectible.  *See Int'l Leisure Prods., Inc. v. Funboy LLC*, No. 16-CV-4667, 2017 WL 6623887, at *9 (E.D.N.Y. Nov. 9, 2017) ("Since, for the reasons set forth above, the second amended complaint fails to state a claim that plaintiff has a protectable trade dress, it also fails to state plausible claims of dilution under either federal or state law."), *aff'd*, 747 F. App'x 23 (2d Cir. 2018); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 284 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017) ("[Counterclaim plaintiff] cannot show that it owns a protectable trademark because the trade dress configurations it claims for the design of its bag closures are functional."); *Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14-CV-391, 2015 WL 3385683, at *9 (S.D.N.Y. May 26, 2015) (holding that plaintiff failed to state a dilution claim under NYGBL § 360-*l* when plaintiff failed to plead distinctiveness and nonfunctionality); *Elements/Jill Schwartz, Inc. v.*

*Gloriosa Co.*, No. 01-CV-904, 2002 WL 1492197, at * 7 (S.D.N.Y. July 15, 2002) (dismissing the plaintiff's claims of trade dress dilution under the Lanham Act and NYGBL § 360-*l* when the plaintiff failed to articulate a protectable trade dress).

Accordingly, Plaintiff fails to state a claim under NYGBL § 360-*l* for dilution of the CONG BAN LV Trade Dress.

### e.  Deceptive trade practices under section 349 of the NYGBL

Defendants argue that the Court should dismiss Plaintiff's claim of deceptive acts and practices under section 349 of the NYGBL because Plaintiff "alleges no facts in support of any harm to the public as a result of the purported deceptive practices of Defendants." (Defs.' Mem. 22). Defendants also argue that pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff is required to plead with particularity "the circumstances constituting fraud," and has not done so. (*Id.* (quoting Fed. R. Civ. P. 9(b)).)

Plaintiff argues that it has sufficiently pled its NYGBL claim because "there can be no question that Defendants' deceptive conduct is harmful and intended to deceive the public," especially consumers who mistakenly purchase Defendants' products believing they are Plaintiff's products. (Pl.'s Opp'n 25.) In addition, Plaintiff asserts that it pleads with specificity, the strong likelihood of consumer confusion in the form of the consumer survey. (*Id.*)

NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To assert a claim under section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.

2000)); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). "The New York Court of

Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be

'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016)

(quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)); *see also Chufen*

*Chen*, 954 F.3d at 500 ("'Deceptive acts' are acts that are 'likely to mislead a reasonable

consumer acting reasonably under the circumstances.'" (quoting *Fink v. Time Warner Cable*, 714

F.3d 739, 741 (2d Cir. 2013))). "The plaintiff, however, must show that the defendant's

'material deceptive act' caused the injury." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)

(quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d

20, 26 (1995)). "[T]he prevailing view in the Second Circuit is that 'trademark . . . infringement

claim[s] are not cognizable under [§ 349] unless there is specific and substantial injury to the

public interest over and above the ordinary trademark infringement.'" *Perfect Pearl Co. v.*

*Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012) (second and third

alterations in original) (quoting *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-CV-1615, 2012 WL

1107648, at *15 (S.D.N.Y. Mar. 30, 2012)); *see also Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341,

352–53 (S.D.N.Y. 2014) (collecting cases holding that trademark infringement is outside the

scope of section 349).

      Plaintiff's allegation that Defendants' conduct resulted in injury to consumers in the form

of consumer confusion is insufficient to state a claim under NYGBL § 349. *See, e.g.*, *Solid 21,*

*Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262, 2020 WL 3050970, at *5 (S.D.N.Y. June 8,

2020) (granting motion to dismiss section 349 claim because, "[w]hile [Plaintiff] alleges facts

showing that Defendants' references to 'Red Gold' could mislead a consumer, [Plaintiff] does

not allege facts that give rise to the inference that consumer confusion would affect the public health or interest").  Accordingly, the Court dismisses this claim.

### f.  Leave to amend

Neither Plaintiff nor Defendants address whether the Court should grant Plaintiff leave to amend the SAC.

Under Rule 15(a) of the Federal Rules of Civil Procedure, district courts should "'freely give' leave to amend [a complaint] 'when justice so requires.'"  *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)); *see also Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016).  Plaintiff's claims for trademark counterfeiting and trademark infringement under section 1114(1) of the Lanham Act and for trademark dilution under NYGBL section 360-*l* as it pertains to the CONG BAN LV Mark are dismissed for lack of standing.  The Court denies Plaintiff leave to amend its claims dismissed for lack of standing because further amendment would be futile.  *See L'Oreal USA, Inc.*, 2013 WL 4400532, at *12 (stating that a *nunc pro tunc* assignment cannot confer standing); *Revolution Eyewear, Inc.*, 2007 WL 9723465, at *14 (denying leave to amend for failure to allege standing in patent infringement context).

Plaintiff's claims relating to the CONG BAN LV Trade Dress for trade dress infringement under section 1125(a) of the Lanham Act and the New York common law, false designation of origin under section 1125(a) of the Lanham Act, unfair competition under the New York common law, dilution under NYGBL § 360-*l*, and deceptive trade practices under NYGBL § 349 are dismissed for failure to state a claim.  The Court grants Plaintiff leave to amend the SAC as to Plaintiff's claims for trade dress infringement under section 1125(a) of the Lanham Act and the New York common law, false designation of origin under section 1125(a)

of the Lanham Act, unfair competition under the New York common law, and dilution under

NYGBL § 360-*l* specifying why Plaintiff's CONG BAN LV Trade Dress is not functional.  The

Court also grants Plaintiff leave to amend the SAC as to Plaintiff's claim of deceptive acts and

practices under NYGBL § 349 to add allegations specifying a specific and substantial injury to

the public interest.

Plaintiff shall file an amended complaint, if any, within thirty days of the date of this

Memorandum and Order.  If Plaintiff elects not to file an amended complaint or fails to file an

amended complaint within thirty days of this Memorandum and Order, the Court will dismiss the

trade dress infringement, false designation, unfair competition, and dilution claims relating to the

CONG BAN LV Trade Dress, as well as Plaintiff's NYGBL § 349 claim with prejudice and

proceed only with Plaintiff's claims for false designation of origin and common law trademark

infringement and unfair competition claims relating to Plaintiff's CONG BAN LV Mark.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and

denies it in part.  The Court dismisses Plaintiff's claims for trademark counterfeiting and

trademark infringement under section 1114(1) of the Lanham Act, and trademark dilution under

NYGBL section 360-*l* without prejudice for lack of standing.  The Court grants Plaintiff thirty

days leave to amend the SAC as to Plaintiff's claims of trade dress infringement under the

Lanham Act and the New York common law, false designation of origin under the Lanham Act,

unfair competition under the New York common law, and dilution under NYGBL § 360-*l* as they

relate to the CONG BAN LV Trade Dress, as well as Plaintiff's deceptive practices claim under

NYGBL § 349.  If an amended complaint is not filed within the time specified, the Court will

dismiss these claims.  The Court denies Defendants' motion as to Plaintiff's claims of false

designation of origin under section 1125(a) of the Lanham Act and of trademark infringement

and unfair competition under the New York common law related to the CONG BAN LV Mark.

Dated: February 25, 2021
       Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge

58